### BENDELARI, Agt., et al. v. KINSLOW et al.

No. 30611. April 13, 1943.

Rehearing Denied May 11, 1943.

*136 P. 2d 918.*

John R. Wallace and A. C. Wallace, both of Miami, for petitioners.

Carmon C. Harris, Ty R. Williams, Cantrell, Carey & McCloud, and B. H. Carey, all of Oklahoma City, and Mac Q. Williamson, Atty. Gen., for respondents.

ARNOLD, J. This is an original proceeding in this court brought by A. E. Bendelari, agent, and Eagle-Picher Mining & Smelting company, hereinafter referred to as petitioners, to obtain a review of an award which was made on September 29, 1941, by the State Industrial Commission in favor of William Kinslow, hereinafter referred to as respondent.

On August 22, 1925, the respondent sustained an accidental personal injury which resulted in serious damage to his eyes, face, and neck and permanent disfigurement. The petitioners furnished necessary medical attention and hospital care and paid compensation for resulting temporary total disability for a period of 95 weeks. The respondent filed a claim with the Industrial Commission based on this injury. The parties, on June 24, 1927, stipulated that temporary disability had terminated as of that date, and attempted by joint petition to settle for the sum of $500 for permanent disability which had resulted from the accidental injury. The State Industrial Commission, however, did not assume jurisdiction over the joint petition for the reason that the parties did not comply with its requirement that they either appear or else furnish evidence by deposition upon which said tribunal could act upon the joint petition, and on account of failure of parties to comply with such requirement made no further order in the matter. The petitioners, however, paid and the respondent accepted the sum of $500 which had been agreed upon in the joint petition. The respondent then returned to the employment of the petitioners as a watchman at a weekly wage of $28. Respondent continued in this latter employment until January 4, 1931, when he sustained another accidental personal injury which resulted in the loss of a finger and systemic blood infection which required medical care and hospitalization for a period of approximately 75 weeks.

Upon the occurrence of this latter injury the petitioners began paying respondent compensation at the rate of $13.46 per week and continued to pay him at such rate for a period of 500 weeks. The respondent filed a claim for compensation based upon this injury.

Thereafter, on February 18, 1941, the respondent filed with the State Industrial Commission a motion to obtain a de-

termination of the degree of permanent disability which he had sustained as a result of his injury on August 22, 1925, and an award of compensation for such disability and the permanent disfigurement which he had also sustained as the result of such injury. The petitioners contested liability on the ground that they had fully discharged their liability to the respondent by making payments which they had made for temporary total disability and $500 in connection with the first injury and the subsequent payment of 500 weeks for permanent total disability.

As a result of hearings had, the trial commissioner made the order now under review; the pertinent findings and portions thereof read as follows:

"1. That heretofore, on the 14th day of September, 1926, an order was issued herein finding that on the 22nd day of August, 1925, the claimant was in the employment of the respondent, and on said date sustained a compensable injury; that claimant's average wage at the time of his injury was $5 per day, and that as a result of said accident claimant had been temporarily totally disabled from the date of said injury and at the time said order was issued claimant was temporarily totally disabled from the performance of ordinary manual labor and whether or not claimant sustained any permanent loss of vision and other permanent injuries and the extent thereof was undeterminable at that time and the commission ordered the respondent to pay claimant compensation at the rate of $18 per week computed from August 27, 1925, until the termination of disability or until otherwise ordered.

"2. That the accidental personal injury sustained by claimant consisted of injury to both eyes and disfigurement to his face and neck.

"3. That claimant's temporary total disability ceased as of June 27, 1927, in accordance with stipulation and for which period of time claimant has heretofore been paid compensation.

"4. That as a result of said accidental injury claimant sustained a 91.8% loss of vision to his right eye and 25% loss of vision to his left eye.

"5. That as a further result of said accidental injury claimant sustained serious and permanent disfigurement on his face and neck.

"Upon consideration of the foregoing facts, the trial commissioner is of the opinion that claimant is entitled to the sum of $5,256, as compensation for 91.8% loss of vision in his right eye and 25% loss of vision in his left eye, the same being based upon the relationship that said disability bears to a permanent total award of 500 weeks or 58.4% of a permanent total award of 500 weeks, being a total of 292 weeks compensation at $18 per week; and that claimant is entitled to the sum of $500 as compensation for his serious and permanent disfigurement resulting from said accidental injury of August 22, 1925.

"It is therefore ordered by the trial commissioner, that within twenty days from the filing of this order the respondent pay to the claimant herein the sum of $5,262 in a lump sum (less the sum of $500 paid claimant on June 24, 1927, for which the respondent should be given credit, and less the amount hereinafter set out as attorney fee), the same being compensation for 91.8% loss of vision to claimant's right eye and 25% loss of vision on his left eye, the same being based upon the relationship that said disability bears to a permanent total award of 500 weeks, or 58.4% of a permanent total award of 500 weeks, and being 292 weeks at $18 per week; and respondent pay claimant the sum of $500 in a lump sum, as compensation for his serious and permanent disfigurement resulting from said accident injury of August 22, 1925."

The petitioner urges two propositions, which read as follows:

"1. Claimant has been paid for 500 consecutive weeks for disability following the injury upon which the award appealed from is based. That it paid such compensation because of the then complete inability of claimant to work due to injuries sustained while in the employ of respondent previous to payment and that it matters not whether disability is the result of the first injury or the second injury, or a combination of both. That claimant cannot recover in any event more than 500 weeks' compensation for existing disability resulting from injury sustained previous to

such payment regardless of the nature of the injury, the number of injuries, or the time of occurrence, if same occurred prior to such payment.

"2. If we are wrong in the above contention, the record shows in this case that the second injury consisted of loss of the fourth finger of left hand, for which claimant would be entitled to 15 weeks' compensation for specific loss, at the rate of $13.46 per week. The record further shows that temporary total disability for this injury was 75 weeks, so claimant at most for this second injury would have been entitled to only 90 weeks' compensation at the above rate, or the sum of $1,211.40."

85 O. S. 1941 § 22 provides:

"In case of total disability adjudged to be permanent, sixty-six and two-thirds per centum of the average weekly wages shall be paid to the employee during the continuance of such total disability not exceeding five hundred weeks."

By reason of this provision an injured workman, who is entitled to compensation under the act, is limited by the maximum number of weeks provided, to wit: 500 weeks, for any one accident resulting in compensable injuries or disability. The maximum limitation provided does not apply in the case of the occurrence of separate and distinct accidents.

It is further provided by the act that in the event of the loss of the vision of one eye, the compensation shall be for a period of 100 weeks. It is also provided by the act that the

"Loss of both hands, or both feet, or both legs, or both eyes, or any two thereof, shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts."

In accordance with the plainly indicated intention of the Legislature, we have consistently held that where an accident results in a loss of vision to both eyes the number of weeks' compensation awarded should be determined by multiplying 500 weeks, the permanent total disability period, by the average per centum of loss of vision in the eyes.

The disability resulting from the accident herein complained of, which occurred on August 22, 1925, resulted, exclusive of the disfigurement in question, to the specific members, the eyes. The commission should have, and we think did, base its award upon the injury to the specific members in question. This award in this case should have been for all loss of vision found by it to exist at the time of the hearing which resulted from the first accident. The commission determined that as a result of the first accident the respondent sustained an average permanent partial loss of vision in the amount of 58.4%. If this determination is based upon any competent evidence, the award for 58.4% of 500 weeks, or 292 weeks, is correct, there being no controversy as to the rate of compensation per week on this claim or the amount of disfigurement awarded.

Respondent's witness, Dr. Shelton, testified that the respondent at the time of the hearing had 100% loss of vision in the right eye and 80% loss in the left. This doctor was asked the following question:

"Doctor, this injury occurred in 1925, and your examination shows you have found numerous scars and dust particles, or particles of rock in his eyes, I will ask if a systemic condition could have caused scars and rock particles to be in his eyes at this time?"

—and the doctor answered: "I do not think *that* had anything to do with it."

He was further asked:

"I will ask you if the condition of his eyes at this time could have been caused by the injury and the rock particles in his eyes since that time, could this condition have been developed without taking into consideration any systemic condition he might have had?"

—and he answered: "Yes, sir."

Dr. Smith, testifying for the petitioners, estimated the respondent had at the time of hearing 100% loss of vision in

the right eye and 25% loss in the left eye, and upon inquiry as to the probable effect of systemic infection upon the condition of his vision, he said:

"I will tell you that systemic infection is getting in some theories that make the question a little unfair. It is theoretically possible, yes, sir, it is theoretically possible."

He was then asked the question:

"I take it since you did not make reference to a systemic condition in your record that is not your theory of this case?"

—and he answered:

"No, I really think my testimony says what I think, don't you think so, Judge."

Dr. Cannon, testifying on behalf of the petitioners, said that in July, 1927, the respondent had a loss of vision in the left eye of 20% and 30% in the right eye; that at the time of the hearing he had a loss of vision of 91.8% in the right eye and his vision in the left eye was 20/200th' or, according to one well-known scientific chart, 80% loss and, according to another, 90% loss.

The testimony as a whole is conclusive that the respondent sustained a very severe injury to his eyes and that many scars and foreign bodies were still present in his eyes at the time of the hearing. It is obvious from the foregoing testimony before the commission that its finding that the respondent had at the time of the hearing an average loss of vision of 58.4% as a direct result of the injury occurring in August, 1925, is supported by competent testimony. The finding of the commission on this question is binding upon us.

The Workmen's Compensation Act makes provision for a hearing on all claims filed with the Industrial Commission to determine liability, nature, cause, and extent of disability by reason of accidental compensable injuries, and it is required that the commission, after hearing conducted, make or deny award for accidental injuries falling within the purview of the act

(85 O. S. 1941 § 26). Such award must be made or denied on each claim filed and the award must be for such an amount as the facts of the case justify and dictate according to the schedule provided by section 22, supra. The reasons why there must be a separate award on each claim filed are obvious. The same employee may have different accidents, as here, and there may be a different employer in each case and different rates of wages may maintain in each instance, as here, and therefore the rate of compensation may differ, as here.

The application of this rule, as intended by the Legislature, will not work prejudice to either party, but on the contrary will prevent injustice. The employer is protected in the manner and to the extent provided by subdivision 6 of section 22, supra, when the later claim based on a subsequent accident is determined. It is provided therein:

"The fact that an employee has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury; but in determining compensation for the later injury his average weekly wages shall be such sum as will reasonably represent his earning capacity at the time of the later injury."

Note that the award in the case based on the subsequent accident and resulting injuries takes into consideration the testimony offered by the employer relative to pre-existing condition in mitigation of the amount of compensation to be awarded, and the award therein must be based on decrease in earning capacity by reason of the injuries resulting directly from the later accident. If the foregoing comprehensive and plain plan of procedure is followed, the rights of all the parties will be protected just as was intended by the Legislature.

Testimony concerning the cause, nature, and extent of the second accident, which apparently was an injury to a finger resulting in a general systemic poisoning, was competent in this case

for the purpose only of showing that a subsequent accident was responsible for a part of the injury to the eyes. It is evident that the commission gave proper consideration to the testimony regarding the second accident in this regard.

From what has hereinbefore been said, it is apparent that the cases cited by petitioners are not applicable to the situation at bar.

The petitioners herein have made various and sundry payments as compensation for the disability resulting from the two accidents. If they wish to take the position that the amount of compensation herein awarded has been fully or partially paid, the commission should set the matter for further hearing and receive testimony thereon and credit such payments on the award herein as the facts and justice require.

Petitioners may also avail thmselves of the provisions of subdivision 6, section 22, supra, when a hearing is had, if ever, to determine the extent of disability resulting from the second accident.

The award is affirmed, with directions to proceed as hereinbefore indicated.

CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, HURST, and DAVISON, JJ., concur. BAYLESS and WELCH, JJ., absent.