J. C. PENNEY COMPANY and the Travelers Insurance Company, Petitioners,

v.

Madelyn CRUMBY and the State Industrial Court, Respondents.

No. 50360.

Supreme Court of Oklahoma.

May 30, 1978.

Rehearing Denied Oct. 20, 1978.

H. W. Nichols, Jr., Looney, Nichols, Johnson & Hayes, Oklahoma City, for petitioners.

Terry Shipley, Noble, for respondents.

IRWIN, Justice.

On January 17, 1968, Madelyn Crumby (Claimant) filed her claim for compensation alleging that she sustained accidental injuries to her low lumbar region on August 8, 1967, during her employment. This claim reflected that she previously had been awarded 30% permanent disability to the body as a whole as a result of a prior accident. After several hearings, changes in claimant's attorneys and delays in prosecution, the order on review was issued in August, 1976. Claimant was awarded 100% permanent disability to her body as a whole as a result of the 1967 accident, and respondents were ordered "to pay all claimant's past and reasonable necessary medical treatment bills incurred due to the injury." The order made no reference to claimant's previous disability. The employer, J. C. Penney Company, and its insurance carrier, hereinafter referred to as respondents, seek review.

The record discloses that in November, 1956, claimant was awarded 30% permanent partial disability for an injury to her right leg. In October, 1957, the surgeon who had operated on claimant's knee, reported she was suffering from osteoporosis and abnormalities of the low back and hips. A motion to reopen based upon a change of condition was filed and an order was entered (May 14, 1958) awarding claimant 75% per-

manent partial disability to the body as a whole.[1]

Claimant relies upon the medical testimony of Dr. R. to support the 100% award on review. Respondents contend this evidence is insufficient to sustain the award because it was incompetent and without probative value in that claimant failed to furnish Dr. R. a complete and accurate history concerning her previous disabilities. Respondents suggest that claimant did not advise Dr. R. of her previous disabilities and Dr. R. admittedly had not checked prior hospital records or reports of other treating physicians concerning claimant's previous disabilities. However, the doctor acknowledged hospital records would be of assistance if other areas of complaint were involved. And, if a prior award involved a back injury, and other parts of the body, it would be necessary to know the amount of disability attributable to the different areas. In answer to direct inquiry, the doctor stated this information might modify his opinion in respect to claimant's back injury.

Claimant contends that respondents did not object to the admission of Dr. R.'s deposition and the two letters introduced by stipulation. Claimant argues that Dr. R.'s

"testimony was to the effect that his opinion would be changed only to the extent claimant's previous adjudication of disability was related specifically to the back, and since claimant has never sustained a previous back injury, Dr. R.'s opinion as to disability was based upon an accurate medical history and his testimony is competent and supports the findings of the State Industrial Court".

Claimant's argument overlooks the fact that she was, as a matter of law, a physically impaired person within the purview of 85 O.S.1961, § 171[2], at the time she sustained the accidental injury in August, 1967.

■ 85 O.S.1971, § 172[3], prescribes the manner in which compensation benefits are to be determined where a "physically impaired person" receives an accidental injury. This section is part of the Special Indemnity Act (85 O.S.1971, sec. 171, et seq.) which contemplates an apportionment of responsibilities between the employer and the Special Indemnity Fund (Fund) in accordance with the statutory formula prescribed by sec. 172. *Levi v. Special Indemnity Fund*, Okl., 389 P.2d 620 (1964). It does not relieve the employer of his responsibilities for an employee's disabilities re-

1. This order contained a finding that a change of condition had necessitated additional hospitalization and treatment "for recurrence of right sciatic pain with radiation into the right knee, degenerative changes of the right knee with enlargement, osteoporosis of the right knee and ankle coupled with early rheumatoid arthritic changes in both sacro-iliac joints."

2. Although 85 O.S.1961, § 171, was amended in 1971, such amendment is not material to the issues presented.

3. 85 O.S.1971, § 172, provides in pertinent part:
    "If an employee who is a 'physically impaired person' receives an accidental personal injury compensable under the Workmen's Compensation Law which results in additional permanent disability so that the degree of disability caused by the combination of both disabilities is materially greater than that which would have resulted from the subsequent injury alone, the employee shall receive compensation on the basis of such combined disabilities, as is now provided by the laws of this state. If such

combined disabilities constitute partial permanent disability or permanent total disability, as now defined by the Workmen's Compensation Laws of this state, then such employee shall receive full compensation as now provided by law for the disability resulting directly and specifically from such subsequent injury, and in addition thereto such employee shall receive full compensation for his combined disability as above defined, after deducting therefrom the percent of that disability that constituted the employee a 'physically impaired person,' as defined herein, all of which shall be computed upon the schedule and provision of the Workmen's Compensation Law of this state. Provided that employer shall be liable only for the degree of percent of disability which would have resulted from the latter injury if there had been no pre-existing impairment. After payments by the employer or his insurance carrier, if any, have ceased, the remainder of such compensation shall be paid out of the Special Indemnity Fund provided for in § 173 of this title, in periodical installments. * * *"

sulting from a subsequent injury but it does protect the employer against responsibilities for the combination of old and new disabilities so that the employer can, without fear of having to pay for disabilities not inflicted, employ a physically impaired person. *Petroleum Maintenance Co. v. Herron*, 201 Okl. 393, 206 P.2d 182 (1949).

Under sec. 172, when a "physically impaired person" receives an accidental injury, he is entitled to receive "full compensation as now provided by law for the disability resulting directly and specifically from such subsequent injury, and in addition thereto such employee shall receive full compensation for his combined disability * * *, after deducting therefrom the percent of that disability that constituted the employee a "physically impaired person". The first responsibility falls upon the employer who is liable "for the disability resulting directly and specifically from such subsequent injury." However, the ensuing language: "Provided the employer shall be liable only for the degree of percent of disability which would have resulted from the latter injury if there had been no preexisting impairment," clearly shows an employer's liability extends only to the disabilities resulting from the subsequent injury, and does not include disabilities that constituted claimant a "physically impaired person" or any increase in disability due to a combination of disabilities. See *Special Indemnity Fund v. Wilson*, Okl., 348 P.2d 1072 (1960).

The *Wilson* case points out the difference in determining the extent of disability resulting in a second injury to a "physically impaired person" and an original injury in this language:

*"Petitioner next argues that inasmuch as the last injury was to the same part of the claimant's back as the prior injury, it is a re-injury or an aggravation of his former condition, and that the employer is liable for the entire disability resulting therefrom. It is, of course, true that where an injury aggravates, or lights up, a dormant condition, the employer may be liable for the entire disability. A review of these cases, however, discloses their inapplicability there, since they involved either aggravation of a dormant disease or of an injury which did not constitute claimant a 'physically impaired person'. * * * "*

Although the *Wilson* case was determined under the laws existing prior to the 1961 amendment of 85 O.S. § 172, (1961 Session Laws, p. 640), such amendment did not change the employer's liability to the injured employee, but did change the State Insurance Fund's liability. Under the 1961 amendment (85 O.S.1971, § 172) the claimant's rights against the Special Indemnity Fund are the same whether the combined disabilities constitute partial permanent disability or permanent total disability.

■ Fund's obligations are somewhat different from those of the employer. In the first place, Fund is not a prime, original or substitute obligor. Rather, its liability is purely derivative, in the sense it is derived or deducted from the anterior obligation of the employer, upon the extent of which it depends and which it merely supplements. Fund's liability does not attach unless and until the extent of the primary obligation, which is sought to be supplemented, stands judicially established by an award against the employer. *Levi v. Special Indemnity Fund*, supra. Fund is responsible only for the disabilities resulting from the combination of the disabilities that rendered the employee a "physically impaired person" and the subsequent injury. However, before Fund's obligation attaches, there must first be deducted the employer's liability and also the percentage of disability that rendered the employee a "physically impaired person."

In *Special Indemnity Fund v. Doughty*, Okl., 558 P.2d 396 (1977) claimant had been adjudicated totally and permanently disabled prior to the time he received the subsequent injury. Claimant was awarded

16% permanent partial disability compensation against his employer as a result of his last injury. In adjudicating the claimant's claim against Fund the State Industrial Court found that claimant had previously been adjudicated totally and permanently disabled but "by reason of his physical constitution, he was able to and, in fact, did achieve recovery to the extent that he was no longer permanently and totally disabled at the time" of his subsequent injury. The Industrial Court found claimant was only 60% permanently partially disabled at the time he sustained his last injury. An award was entered against Fund for 24% permanent disability to the body as a whole based upon a finding that claimant was then 100% disabled. This 24% was the increase in disability resulting from the combination of the 60% disability that constituted claimant a physically impaired person and the 16% disability attributable to the subsequent injury and for which the employer was liable. Although we vacated the State Industrial Court's order on other grounds we did approve the court's application of sec. 172.

■ *Doughty* recognizes two principles. First, an adjudication of permanent disability to the body as a whole resulting from one or more injuries determines the rights and liabilities of the parties in that proceeding but is not an adjudication of claimant's physical condition in futuro and does not establish the degree of disability constituting claimant a "physically impaired person" in another proceeding involving a subsequent injury. Second, an award of 100% permanent disability to the body as a whole does not preclude additional compensation benefits for a subsequent injury, i. e., 500 weeks compensation is the maximum provided for any one accident, but where the claimant has sustained two separate and distinct accidents, each resulting in compensable injuries, he is not limited to

500 weeks total compensation for injuries resulting from both accidents. See also *Bendelari v. Kinslow,* 192 Okl. 390, 136 P.2d 918 (1943).

In applying the above principles to the case at bar we will first assume, arguendo, that claimant was only 50% permanently disabled to her body as a whole at the time she sustained her subsequent injuries.[4]

■ If claimant sustained a 25% disability to her body as a whole because of the subsequent injury the respondents are liable for the 25% attributable to the subsequent injury. Fund would be liable for the combined disabilities after first deducting the 25% attributable to the subsequent injury for which respondents are liable, and the 50% disability constituting claimant a "physically impaired person". If by combining the two disabilities there is no increase in disability, Fund is not liable; if there is an increase over the 75% by the combination, Fund would be liable for the increase.

■ If claimant sustained a 50% disability to the body as a whole because of the subsequent injury, respondents are liable for the 50% attributable to the subsequent injury. No liability could attach against Fund because there could be no increase in the 100% disability, and Fund would be entitled to have deducted the 50% attributable to the last injury and the 50% constituting claimant a "physically impaired person" before Fund would be liable.

■ In the case at bar the medical evidence failed to recognize and the State Industrial Court's order made no reference to the fact that claimant, at the time of the injury here involved, was a "physically impaired person" because of the previous adjudication of 75% permanent disability to her body as a whole. Although this 75%

---

4. We are assuming this 50% disability only for clarification as there is no evidence in the record concerning claimant's degree of disability at the time she received her subsequent injury and claimant previously had been adjudicated as having a 75% permanent disability to her body as a whole.

adjudication did not establish claimant's degree of disability at the time she sustained her subsequent injury, such disability was material in determining respondents' liability for the injuries attributable only to the last accident. The medical evidence is not only insufficient to support the award even if the State Industrial Court had made the necessary findings that would be consistent with sec. 172, but the order is insufficient even if the medical evidence had been sufficient.[5]

█ Claimant contends that claimant's previous disability is immaterial because the injuries which constituted her a physically impaired person were not in the same area as those for which compensation was awarded. Claimant argues the injuries here are to her back, whereas her previous disability was to her leg.

Whether claimant's previous adjudication of disability covered injuries related to or unrelated to, claimant's back is immaterial. Sec. 172, supra, makes no distinction between a subsequent injury to the same part of the body for which a previous award to the body as a whole has been made, and a subsequent injury to another part of the body. As an example: A claimant has been awarded 50% permanent partial disability to the body as a whole by reason of an injury to his right shoulder. If claimant receives a subsequent injury to either his right shoulder or lower back, there is no difference in determining the compensation benefits under § 172. However, the employer is liable only for the disability resulting directly and specifically from the subsequent injury. So, if the claimant sustains a subsequent injury to his right shoulder and he was 50% physically impaired at that time because of a previous injury to his right shoulder, the maximum award against the employer could not exceed a 50% award. Although the medical evidence and findings by the State Industrial Court might need be

more exacting where the subsequent injury occurs to the same part of the body, these additional burdens do not effect either the claimant or the employer's rights under sec. 172. See *Special Indemnity Fund v. Wilson,* supra.

█ Respondents also contend the State Industrial Court erred in ordering payment "for claimant's past reasonable and necessary medical treatment bills incurred due to the injury." Although the parties filed a stipulation concerning what the testimony of Dr. R. would be concerning the reasonableness of certain medical bills and their relation to claimant's injuries, the stipulation does not constitute an admission that respondents owed them or a stipulation or agreement that respondents would pay them. The record discloses that at a hearing conducted on August 15, 1973, claimant submitted several exhibits indicating that she had incurred $8,178.09 in medical bills. The trial judge at that hearing neither approved nor disapproved the medical claim. Additional bills were later submitted for medical treatment subsequently given and for medicine furnished. The record will simply not support a sustention of that part of the order relating to medical expenses.

Award vacated and remanded for further proceedings.

HODGES, C. J., and WILLIAMS, BERRY, SIMMS, JJ., concur.

DAVISON, J., concurs in result.

LAVENDER, V. C. J., and BARNES and DOOLIN, JJ., dissent.

---

5. The State Industrial Court must make specific findings of fact responsive to the issues as well as conclusions of law upon which to predi-

cate an order granting or denying an award. *Flint Construction Co. v. Woods,* Okl., 425 P.2d 995 (1967).