**WESTERN COMPANY OF NORTH AMERICA and National Union Fire Insurance, Petitioners,**

v.

**Joe W. NICHOLSON and the Workers' Compensation Court, Respondents.**

**No. 79624.**

Supreme Court of Oklahoma.

June 8, 1993.

Jacque Jeffries Brawner, Brawner & Brawner, Oklahoma City, for petitioners.

Albert M. Morrison, William H. Brogden, Oklahoma City, for respondents.

## OPINION

WATT, Justice.

This is an appeal from an order of the Workers' Compensation Court awarding Nicholson payments for permanent total disability. The trial court found that Nicholson's permanent total disability was solely caused by a June 1990 on-the-job injury Nicholson sustained to his left knee while working for Respondent, the Western Company.

The Western Company appealed to a three judge panel of the Workers' Compensation Court, complaining the record failed to support the finding that the June 1990 injury solely caused Nicholson's permanent total disability. In addition, the Western Company claimed that the trial court considered neither Nicholson's preexisting disabilities nor his transferrable skills. The

three judge panel, made up of Judges Lynn, Willis, and West, affirmed by a vote of two to one. Judge West dissented, saying that she "would remand for a finding of permanent partial disability to the knee and deny permanent total disability."

The Western Company appealed the three judge panel's order to the Court of Appeals, Division 3. The Court of Appeals affirmed on the ground the record supported the trial court's finding that Nicholson's permanent partial disability was solely caused by the June 1990 injury to his left knee. We granted certiorari on March 1, 1993.

## FACTS

On July 19, 1990, Nicholson filed in the trial court his Employee's First Notice of Accidental Injury and Claim for Compensation, Form 3. Nicholson claimed that he had torn the cartilage in his left knee when he stepped in a hole while working for Western Company. This is undisputed.

The Form 3 contains a question asking whether the claimant is a "physically impaired person." If the employee claims to be a physically impaired person, the Form 3 requests that he "describe the impairment and give the dates of the injuries and of any court orders." There is a blank on the Form 3 in which the employee is to answer "Yes" if he is physically impaired. Nicholson failed to fill in this blank but described surgical repairs to both knees and an injury to his left shoulder that caused a combined seventy-five to eighty-five percent impairment. In addition, Nicholson recited that

he had been sixty-eight and nine-tenths percent disabled from having lost an eye in 1979.[1]

On April 9, 1985, the workers' Compensation Court entered an order in another matter approving a joint petition settlement between Nicholson and the Special Indemnity Fund. In that order the court recited that Nicholson "has sustained 105 percent permanent partial disability to the body as a whole." The disability was from four injuries sustained to Nicholson's left leg (20%), right leg (15%), neck (10%), and eye (66⅔%) between 1971 and 1978.[2]

The Workers' Compensation Court entered an order in a third matter involving Nicholson and his then employer, Epi Center, Inc., on July 25, 1988. The court approved Epi Center's payment to Nicholson of $18,337.50 in settlement of all claims arising from an on the job injury sustained on October 26, 1987. Nicholson settled for injuries to his "right leg, lungs and all other claims known or unknown."

Nicholson suffers from diabetes. He also has a genetic tendon deficiency in his hands.

Because of his June 12, 1990 injury, Nicholson's left knee joint was replaced with a prosthetic one. Complications resulted, including infection, which resulted in the need for additional surgeries, including a second joint replacement. Nicholson's left knee is painful, and he has significant weakness in his left leg. He walks with a cane.

At the hearing, Nicholson introduced the deposition of Dr. H.[3] The parties agree

---

**1.** Nicholson described his previous injuries on his Form 3 as follows:

| ND | '71 | left knee | $500.00 | 10% | surgery |
| OK | '73 | right knee | | 15% | surgery |
| KS | '79 | lost eye | | 68.9% | |
| OK | '82–'83 | left shoulder | | 35–40% | |
| OK | '87 | right knee | | 15–20% | arthroscopic surgery |

**2.** The record does not explain the discrepancy between the one-hundred-five percent disability found by the court and the total of the disabilities from the previous injuries, one-hundred-eleven and two-thirds percent.

**3.** We find particularly relevant, the following testimony from Nicholson's direct examination of Dr. H.:

Q. Did you make an evaluation as to permanent partial disability to the left knee as a result of the injury of June 12, 1990?

A. In my opinion he had 75 percent permanent partial impairment of the left leg from the knee over and above any previous impairment.

Q. So you're attributing 75 percent permanent partial impairment to the left knee or leg to the injury of June 12, 1990?

that Nicholson was permanently and totally disabled following his June 12, 1990 accident. Nevertheless, whether Dr. H.'s testimony supports the trial court's finding that Nicholson's disability was solely the result of the 1990 injury is a source of hot contention between the parties.

## ISSUE

Did the trial court err in finding that Nicholson's permanent and total disability was solely caused by the June 12, 1990 injury to his knee, and in failing to make a finding as to what degree of permanent disability Nicholson suffered from immediately before June 12, 1990 injury? We answer yes.

## DISCUSSION

◼ The Workers' Compensation Act advances a strong social policy to encourage employers to hire handicapped workers. 85 O.S. 1981 §§ 171 and 172. Section 171 defines the term "physically impaired person" as "a person who ... has suffered the loss of the sight of one eye, ... or any disability which previously has been adjudged and determined by the Workers' Compensation Court...." [4] Under § 172 if an employee is a "physically impaired person," as defined by § 171, and sustains an on the job injury resulting in permanent total disability,

> A. Yes.
>
> Q. And what the court wants to know, and I'm sure probably the basis of this deposition is, is this injury of June 12, 1990, when he was employable, the sole and proximate cause of the permanent total disability that you now make this person?
> A. Well, *the man had had previous impairments and some of them were pretty significant,* but he was able to work and do heavy jobs until this injury. So it's my opinion that this injury caused him to be permanently and totally disabled.
> Q. *You're taking into consideration the other injuries?*
> A. *Yes.*
> Q. But you're saying at the time this happened he could work?
> A. Yes, and he was doing heavy work.
> Q. *So you're saying that this injury is like the straw that broke the camel's back, pushed him over the edge, and it's the factor that is making him presently permanently and totally disabled?*

... The employer shall be liable only for the degree of percent of disability which would have resulted from the latter injury if there had been no preexisting impairment.... 85 O.S. 1981 § 172.B.

◼ Under this statutory scheme, the Special Indemnity Fund pays the permanently and totally disabled worker the difference between the amount of disability for which the present employer is liable and the amount necessary to compensate him fully for his combined disability. The purpose of these statutes is

> ... to protect the employer against responsibilities for the combination of old and new disabilities *so that the employer can, without fear of having to pay for disabilities not inflicted, employ a physically impaired person.* [Emphasis added.]

*J.C. Penney Co. v. Crumby,* 584 P.2d 1325, 1329 (Okla.1978). In *Crumby* we held that the Workers' Compensation court *must* find the degree of disability immediately before the present injury where the claimant is a "physically impaired person." We explained that this was necessary because, under § 172, the employer could be liable for no more than the difference between claimant's existing disability at the time of the accident and the amount of his disability after the accident. "An employer's lia-

> A. *That's my opinion, yes.*
> [Emphasis added.]

4. The entire text of 85 O.S. 1981 § 171 reads as follows:

> For the purpose of sections 171 through 176 of this title, the term "physically impaired person" is hereby defined to be a person who as a result of accident, disease, birth, military action, or any other cause, has suffered the loss of sight of one eye, the loss by amputation of the whole or a part of a major member of his body, or the loss of the use or partial loss of the use of a major member such as is obvious and apparent from observation or examination by an ordinary layman, that is, a person who is not skilled in the medical profession, or any disability which previously has been adjudged and determined by the Workers' Compensation Court including all separately adjudicated injuries and adjudicated occupational diseases even though arising at the same time.

bility extends only to the disabilities resulting from the subsequent injury, and *does not include disabilities that constituted claimant a 'physically impaired person.'"* [Emphasis added.] Id. 584 P.2d at 1329. We also observed that § 172 "makes no distinction between a subsequent injury to the same part of the body ... and a subsequent injury to another part of the body." Id. at 1331. In describing the rule we used the following example:

> ... However the employer is liable only for the disability resulting directly and specifically from the subsequent injury. So, if the claimant sustains a subsequent injury to his right shoulder and he was 50% physically impaired at that time because of a previous injury to his right shoulder, the maximum award against the employer could not exceed a 50% award.

Id. at 1331.

■ Nicholson claims the Western Company may not rely on the fact that he was a physically impaired person because the Western Company did not state in the record that Nicholson had been adjudged one-hundred-five percent impaired. We reject this contention. Nicholson was, as a matter of law, a physically impaired person because the Workers' Compensation Court had so found on several occasions, the most recent less than two years before the injury at issue here. In addition, Nicholson was undisputedly blind in one eye, which would have brought him within the definition of a physically impaired person without any adjudication. Given these undisputed facts, the trial court committed reversible error in failing to make the findings required by *Crumby*.

Nicholson contends that the Western Company should be liable for his permanent disability because he testified that he could work before his 1990 injury but not afterward. As noted, this fact begs the question. The Western Company's liability to Nicholson is limited to the difference between his percentage of permanent disability immediately before the 1990 accident, and his permanent total disability,

which was his admitted condition, after the 1990 accident. *Crumby,* Id. 584 P.2d at 1331.

According to Nicholson, Dr. H.'s testimony shows that Dr. H. believed Nicholson's permanent total disability would have resulted from the 1990 injury *without regard to Nicholson's many earlier injuries and resulting disability.* We disagree. Dr. H. said that Nicholson had "previous impairment from the [left] knee." He testified that he took the other injuries into consideration and agreed with Nicholson's counsel that the 1990 injury "is like the straw that broke the camel's back, pushed him over the edge." Note 3, Id. Notably, Dr. H. did *not* say that Nicholson was not a physically impaired person before the 1990 accident. He merely observed that Nicholson was working full time.

■ Nicholson confuses the effect of preexisting disabilities in Workers' Compensation cases with their effect in tort liability cases. A defendant in a common law tort action is liable for all harm that his negligence causes the plaintiff, although the plaintiff's disability is made worse because of a preexisting condition. The rule in Workers' Compensation matters is different, however. Where the claimant is a physically impaired person under § 171 the employer has no responsibility to compensate the claimant for any preexisting disability. The reason the rules are different is the policy of the Workers' Compensation Act to create an environment that will encourage employers to hire physically handicapped workers.

■ There is a *presumption* that Nicholson was a physically impaired person immediately before the 1990 injury as he had been when his impairment was last adjudicated. *B.F. Goodrich v. Frost,* 630 P.2d 321, 323 (Okla.1981). Nicholson's proof that he was working full time at the time of the accident did not dispel the presumption that Nicholson was a physically impaired person immediately before the accident.[5]

---

5. In this connection we note that, in 1979, Ni-

cholson was found to be 66.67% permanently

To affirm the trial court would send a message to employers in the State of Oklahoma that they take a significant risk by hiring the disabled. Sections 171 and 172 are designed to eliminate this risk. To advance the wise social policy of §§ 171 and 172 to encourage employers to hire the handicapped, we vacate the trial court's award, and remand this matter for new trial. The trial court is instructed to take evidence and make a factual finding of the percentage of Nicholson's permanent disability immediately before the 1990 accident. We further instruct the trial court to limit any award against the Western Company to that disability "resulting directly and specifically" from the 1990 accident. *Crumby,* Id. at 1331.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; AWARD OF THE WORKERS' COMPENSATION COURT VACATED; CAUSE REMANDED WITH INSTRUCTIONS.**

All the Justices concur.

disabled as a result of blindness in his right eye, and that he was still blind in that eye at the time he sustained his 1990 injury.