2001 OK CIV APP 34

**Kitty Lynne FAIR, Petitioner,**

v.

**MULTIPLE INJURY TRUST FUND and The Workers' Compensation Court, Respondents.**

**No. 94,842.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 26, 2000.

Certiorari Denied Feb. 27, 2001.

Susan H. Jones, Wilson Jones, P.C., Tulsa, Oklahoma, for Petitioner.

Georgiana Peterson, Gregory J. Crawford, Pray, Walker, Jackman, Williamson & Marlar, Oklahoma City, Oklahoma, for Respondents.

## OPINION

GOODMAN, C.J.

¶ 1 This is a proceeding to review an order of a Workers' Compensation Court three-judge panel modifying an award of temporary total disability benefits. The issue is whether competent evidence supports the trial court's holding that, because the claimant was not a physically impaired person at the time of her latest injury, the court lacked jurisdiction to impose liability. Based upon our review of the record and applicable law, we vacate the order and remand with directions.

I

¶ 2 On July 6, 1989, claimant Kitty Lynne Fair was awarded permanent partial disability benefits for injuries she sustained to her neck and back while in the course and scope of her employment as a custodian for employer Tulsa Public Schools. She was awarded benefits for temporary total disability and permanent partial disability in addition to compensation for bilateral disfigurement of her hips. The order, dated May 28, 1996, also contained a finding that, at the time of the injury, the claimant had pre-existing permanent impairments of 5 percent to the neck and 3 percent to the back.

¶ 3 On July 23, 1996, the claimant filed a Form 3–F seeking additional compensation against the Special Indemnity Fund, now known as the Multiple Injury Trust Fund. She sought benefits for permanent total disability or, alternatively, a material increase in disability. She alleged that at the time of her 1989 injury she was a physically impaired person as a result of unadjudicated pre-existing injuries to her neck and back, and an obvious and apparent bilateral injury to her knees. The claimant and two witnesses testified regarding her physical condition and everyday physical manifestations. The parties each submitted medical evidence over detailed probative value objections, and the employer stipulated that if the court finds an obvious and apparent impairment, the claimant would be entitled to a 5 percent permanent partial disability award.

¶ 4 In an order filed February 28, 2000, the court held "the crumby [sic] finding in the May 28, 1996 Order can not be used to establish claimant as a 'physically impaired person' under 85 O.S. § 171." The court also

held that the "claimant's knee problems are not obvious and apparent nor manifested by constant, everyday conduct or movement which demonstrate a pronounced physical defect or impairment." As a result, the court held that the "claimant was not a 'physically impaired person' at the time of her latest injury on July 6, 1989. Thus, this Court does not have jurisdiction to impose liability against the Special Indemnity Fund now the Multiple Injury Trust Fund."

¶ 5 A split three-judge panel affirmed the order. The claimant seeks our review.

## II

¶ 6 The claimant contends no competent evidence supports the trial court's holding that she is not a physically impaired person as a result of unadjudicated but obvious and apparent pre-existing injuries to her knees.

¶ 7 Whether a workers' compensation claimant is a physically impaired person within the meaning of the Workers' Compensation Act presents a fact question to be determined from all the evidence. *Special Indemnity Fund v. Osborne,* 1954 OK 191, 272 P.2d 392. We are required to make an *independent* review of the facts to determine whether a claimant is a physically impaired person as defined in 85 O.S. Supp.1986, § 171, which was in effect on the date the claimant sustained her 1989 work-related injury. *Special Indemnity Fund v. Estill,* 1997 OK 99, 943 P.2d 606.

¶ 8 Under § 171, the claimant's pre-existing knee disability might be used in this claim against the Fund if it resulted in the loss of the use, or partial loss of the use, of a member such as is "obvious and apparent from observation or examination by an ordinary layman." In *Special Indemnity Fund v. Scott,* 1982 OK 110, ¶ 11, 652 P.2d 278, 280, the Oklahoma Supreme Court held:

A previous unadjudicated impairment may be established either by lay or medical testimony. *Special Indemnity Fund v. Roberts,* 356 P.2d 561, 563 (Okl.1960). The requirement that the impairment be obvious and apparent to a layman is established (1) when the condition itself is obvious and apparent or (2) when the condition

is manifested by constant, everyday conduct or movement which demonstrates a pronounced physical defect or impairment.

¶ 9 The claimant's first witness testified that she had known the claimant since 1982 when they worked together for another employer. The women developed a social relationship almost like a mother and daughter and occasionally saw each other after work and on weekends. The witness drove herself and the claimant to work on a daily basis from 1982 to 1986. The witness testified the claimant often complained of pain in her knees, and "[e]verytime she stood up to do anything out of that chair, she rubbed her knees." She testified the claimant did not walk with an obvious limp at work, but "had problems after working all day, sometimes even walking up the stairs into the house." The two women occasionally took walks on weekends but "we weren't able to go very far and she'd have to go back home. She just couldn't walk.... After a while, she would have a limp" and return to her house to prop up her legs.

¶ 10 A second witness testified she had known the claimant as a friend since 1985. The witness also stated the claimant did not always walk with an apparent limp, but said the claimant walked like her leg was "tired." She said:

The first time that I was aware of her knees was we lived in a townhouse, and I was upstairs, and she was coming up the stairs. And then I've noticed it, you know, regularly after that. Usually, it's when stair climbing ... she would stop and ... take one step and one step, instead of normal people, you know, climbing a step, foot after foot, she would stop and then do one foot, one foot, one foot, sometimes.

She stated other times the knee impairment was noticeable to her were when the claimant was "getting up, not being able to sit for very long at a time, stretching her knees, you know, pushing it out and rubbing" the left knee. The witness stated that walking "it was like sometimes, and this wasn't all the time," the claimant's gait was "a little slower" than a "normal" person's gait, therefore

the witness had concluded "there is some problem in walking."

¶ 11 The claimant testified she experienced bilateral knee degeneration beginning in the 1970s, "but the left knee has always been worse." In 1983, she received medical treatment and took medication for knee pain and swelling. After that, she said she "favored" her left leg when walking, but her knee problems were "off and on [i]t wasn't every second, but it was frequent." In the two years prior to her work-related injury in 1989, she said she had "daily problems" with her knees. She testified she could not sit for much longer than an hour due to knee discomfort. To relieve the pain, the claimant would first rub her knees, get up from her chair, and walk to relieve the discomfort. She used heat packs and took over-the-counter medication for pain. She said her left knee "would be stiff on arising [in the morning] and it would be sore during the day, with pain, and when I would sit too long, then it would be stiff and sore, and by nighttime, it would be painful." In October 1999, she had a total left knee replacement.

¶ 12 The trial court relied upon *Cozart v. Special Indemnity Fund*, 1998 OK CIV APP 73, 958 P.2d 176, in reaching its conclusion that the claimant was not a physically impaired person. In *Cozart*, the claimant alleged that, before his work-related injury, he was a physically impaired person due to an obvious and apparent impairment of his back as manifested by a limp in his right leg. The court held the claimant had failed to carry his burden of proof because he did not present "evidence concerning how pronounced his limp was immediately prior to the 1993 injury." The court, citing *Scott*, concluded: "The pronounced nature of the limp has more significance in this case because of Claimant's allegation that the limp was a manifestation of the loss of use of another part of his body, his back." *Cozart*, 1998 OK CIV APP 73 at ¶ 6, 958 P.2d at 178. We are not persuaded by the *Cozart* analysis and decline to follow it.

¶ 13 In *Scott*, the claimant alleged he was a physically impaired person due to a condition manifested by obvious and apparent periodic drainage of a cyst on his tailbone, and pain

and numbness from sitting. His wife testified the claimant "often had an expression of pain on his face when he sat down and that he occasionally screamed in his sleep." The Oklahoma Supreme Court stated that a pre-existing impairment is obvious and apparent when (1) the condition itself is obvious and apparent, *or* (2) when the condition is manifested by constant, everyday *conduct or movement* which demonstrates a pronounced physical defect or impairment. The court held the claimant was a physically impaired person. *The extent of the claimant's conduct by which he manifested his impairment was not a factor in the court's analysis.*

■ ¶ 14 As we read *Scott*, the critical question is whether there was daily conduct demonstrative of a pronounced underlying impairment, *not* whether the daily conduct or movement was itself pronounced. Thus, contrary to the *Cozart* analysis, in our opinion the extent to which the daily conduct is pronounced is irrelevant *as long as the conduct is obvious and apparent to a layman.*

¶ 15 We have independently searched the record under review and conclude that, at the time of her 1989 work-related injury, the claimant was a physically impaired person because of an obvious and apparent impairment manifested by "constant, everyday conduct or movement which demonstrates a pronounced physical defect or impairment." *Scott*, 1982 OK 110 at ¶ 11, 652 P.2d at 280. All witnesses testified that any exaggerated limp in the claimant's gait occurred only occasionally. It is undisputed, however, that on a daily basis, the claimant was unable to remain seated much longer than an hour due to knee pain, that before rising she always rubbed or massaged her knees, that she walked with a slower gait than a "normal" person, and that she "favored" her left leg due to the impairment of her left knee. These daily manifestations were observable by the claimant's lay witnesses. Based upon those daily manifestations, the witnesses had concluded that the claimant was impaired due to the condition of her knees.

III

¶ 16 After careful examination of the record and applicable law, we hold that compe-

tent evidence establishes that the claimant was a physically impaired person within the meaning of the 85 O.S. Supp.1986, § 171. The order of the Workers' Compensation Court is vacated and the matter is remanded to the trial court with directions to enter an award within the range established by the competent medical evidence adduced at trial.

¶ 17 ORDER VACATED AND MATTER REMANDED WITH DIRECTIONS.

¶ 18 STUBBLEFIELD, J., and REIF, J., concur.