2001 OK 79

**Charles Tom AUTRY, Petitioner,**

v.

**The MULTIPLE INJURY TRUST FUND and The Workers' Compensation Court, Respondents.**

No. 94,919.

Supreme Court of Oklahoma.

Sept. 25, 2001.

As Corrected Oct. 11, 2001.

Rehearing Denied Nov. 6, 2001.

David Custar, McCaffrey & Tawwater, Oklahoma City, OK, for Petitioner.

Georgiana Peterson, Gregory J. Crawford, Pray, Walker, Jackman, Williamson & Marlar, Oklahoma City, OK, for Respondent Multiple Injury Trust Fund.

HODGES, J.

¶ 1 The facts are not disputed. Charles Thomas Autry (Claimant) sustained a compensable injury to his lower back on March 8, 1994. On January 2, 1995, he suffered a second injury, this one to his right foot. Both injuries occurred while he was working for Lance, Inc. (Employer). A workers' compensation claim was filed for each injury.

¶ 2 Permanent partial disability was awarded on September 1, 1999, for the first injury and on September 14, 1999 for the second injury. Claimant challenged the trial tribunal's calculation of benefits for the first injury before an *en banc* panel of the Workers' Compensation Court. On November 1, 1999, while that decision was pending, the 1999 amendment to section 172(A) of the Workers' Compensation Act, Okla. Stat. tit. 85, §§ 1–211 (1991 & Supp.2000), went into effect. On December 16, 1999, the *en banc* panel issued an order correcting the trial tribunal's calculation of benefits.

¶ 3 Claimant filed a claim for benefits from the Multiple Injury Trust Fund (Fund) on January 26, 2000. The Workers' Compensation Court adopted the argument of the Fund and held that Claimant could not recover benefits from the Fund under the 1999 amendment. The Court of Civil Appeals vacated the order adopting Claimant's argument that the pre 1999 version of section 172(A) applied as the law in effect at the time of the subsequent injury.

¶ 4 The legal issue arises from the Legislature's amendment of § 172(A) of the Workers' Compensation Act effective November 1, 1999. Prior to that date, certain permanent partial disability claimants were entitled to receive benefits from the Fund. After the 1999 amendment, however, section 172(A)(2)(b) provides that "for actions filed after October 31, 1999" the claimant shall receive permanent partial disability from the employer only. Thus additional benefits were no longer available from the Fund.

¶ 5 Claimant argues that the Court of Civil Appeals was correct in applying the pre–1999 version of section 172(A) as the law in effect at the time of the most recent injury. The Fund argues that the express language of the 1999 amendment demonstrates the legislative intent that the statute should be applied retroactively to all claims filed for benefits from the Fund after October 31, 1999, without regard to the date of the most recent injury.

¶ 6 The dispositive threshold question is not which version of section 172(A) applies. On November 1, 1999, the 1999 amendment became effective, contrary to the conclusion of the Court of Civil Appeals. Rather, it is the meaning of the phrase "for actions filed after October 31, 1999" which controls. Does the phrase refer to an "action" for permanent partial disability benefits for the second injury or an "action" for benefits from the Fund following an adjudication of the second injury? This Court determines that the Legislature was referring to an action on the second injury when it drew the distinction between actions filed before November 1, 1999, and those filed after that date.

## The Creation and Dissolution of the Fund

¶ 7 The Fund, formerly the Special Indemnity Fund, was first established in 1943 to relieve employer hesitation to hire workers who suffered previous impairment by assuring employers that they would not be responsible for the combination of old and new disabilities. *See Special Indem. Fund v. Archer, 847 P.2d 791,* 794 (Okla.1993). An employer was responsible only for the permanent partial disability resulting from the subsequent injury as if there were no previ-

ous impairment. Any material increase in disability caused by the combination of the previous impairment and the subsequent injury was borne by the Fund.[1] Okla. Stat. tit. 85, § 172(A) (Supp.1995)

¶ 8 In 1994, a joint legislative committee was created to study the Fund including "[a] determination of the impact that dissolution of the [Fund] would have on businesses located in this state." Okla. Stat. tit. 85, § 182 (Supp.1995). In 1999, dissolution of the Fund began with the amendment of section 172(A).[2]

¶ 9 Under the amendment, "[f]or actions filed after October 31, 1999," a combination of disabilities resulting in permanent partial disability would result in employer responsibility only for the disability caused by the subsequent injury. *Id.* at § 172(A)(2)(b). Nor would the employee receive any additional compensation for the combined disability from the Fund. *Id.* Thus, the disabled

---

1. The version of section 172(A) in effect before the 1999 amendment provided:

   A. If an employee who is a "physically impaired person" receives an accidental personal injury compensable under the Workers' Compensation Act which results in additional permanent disability so that the degree of disability caused by the combination of both disabilities in materially greater than that which would have resulted from the subsequent injury alone, the employee shall receive compensation on the basis of such combined disabilities. Only disability due to an injury to the body as a whole shall be combinable with a prior body disability, except that disability to a major member may be combined with disability to the body as a whole. If such combined disabilities constitute partial permanent disability as now defined by the Workers' Compensation Act of this state, then such employee shall receive full compensation as now provided by law for the disability resulting directly and specifically from such subsequent injury, and in addition thereto such employee shall receive full compensation for his combined disability as above defined, after deducting therefrom the percent of that disability that constituted the employee a "physically impaired person", as defined herein, all of which shall be computed upon the schedule and provision of the Workers' Compensation Act of this state. Provided the employer shall be liable only for the degree of percent of disability which would have resulted from the latter injury if there had been no preexisting impairment. After payments by the employer or his insurance carrier, if any, have ceased, the remainder of such compensation shall be paid out of the Special Indemnity Fund provided for in Section 173 of this title, in periodic installments.

2. Section 172(A) was amended in 1999 to provide:

   A. 1. Except as otherwise provided in this section, an employee who is a "physically impaired person" receives an accidental personal injury compensable under the Workers' Compensation Act which results in additional permanent disability so that the degree of disability caused by the combination of both disabilities is materially greater than that which would have resulted from the subsequent injury alone, the employee shall receive compensation on the basis of such combined disabilities. Only disability due to an injury to the body as a whole shall be combinable with a prior body disability, except that disability to a major member may be combined with disability to the body as a whole.

   2. a. For actions filed before November 1, 1999, if such combined disabilities constitute partial permanent disability as defined in Section 3 of this title, then such employee shall receive full compensation as now provided by law for the disability resulting directly and specifically from such subsequent injury, and in addition thereto such employee shall receive full compensation for the combined disability as above defined, after deducting therefrom the percent of that disability that constituted the employee a "physically impaired person", as defined herein, all of which shall be computed upon the schedule and provision of the Workers' Compensation Act. After payment by the employer or the insurance carrier of the employer, if any, have ceased, the remainder of such compensation shall be paid out of the Multiple Injury Trust Fund provided for in Section 173 of this title, in periodic installments.

   b. For actions filed after October 31, 1999, if such combined disabilities constitute partial permanent disability as defined in Section 3 of this title, then such employee shall receive full compensation as now provided by law for the disability resulting directly and specifically from such subsequent injury. The employee shall not receive any additional compensation for the combined disability as above defined, after deducting the percent of disability that constituted the employee a "physically impaired person".

   c. For all actions, the employer or the insurance carrier of the employer shall be liable only for the degree of percent of disability which would have resulted from the latter injury if there had been no preexisting impairment.

   Okla. State tit. 85, § 172(A) (Supp.1999).

worker now bore the responsibility for any material increase in permanent partial disability resulting from the combination of disabilities. Inexplicably, the Legislature made the filing of an "action", rather than the date of injury, the event which triggered operation of the new rule for calculating benefits.

3. The current version of section 172 as amended in 2000 provides:

§ 172. Compensation for additional disability-Liability of employer-Payment from Multiple Injury Trust Fund

A. 1. For actions filed before November 1, 1999, except as otherwise provided in this section, an employee, who is a "physically impaired person" and who receives an accidental personal injury compensable under the Workers' Compensation Act which results in additional permanent disability so that the degree of disability caused by the combination of both disabilities is materially greater than that which would have resulted from the subsequent injury alone, shall receive compensation on the basis of such combined disabilities from the Multiple Injury Trust Fund. Only disability due to an injury to the body as a whole shall be combinable with a prior body disability, except that disability to a major member may be combined with disability to the body as a whole.

2. a. For actions filed before November 1, 1999, if such combined disabilities constitute partial permanent disability as defined in Section 3 of this title, then the employee shall receive full compensation as now provided by law for the disability resulting directly and specifically from the subsequent injury, and in addition thereto the employee shall receive full compensation for the combined disability as above defined, after deducting therefrom the percent of that disability that constituted the employee a "physically impaired person", as defined herein, all of which shall be computed upon the schedule and pursuant to the provisions of the Workers' Compensation Act. After payments by the employer or the insurance carrier of the employer, if any, have ceased, the remainder of such compensation shall immediately be paid out of the Multiple Injury Trust Fund provided for in Section 173 of this title, in periodic installments. The employer or the insurance carrier of the employer shall be liable only for the degree of percent of disability which would have resulted from the latter injury if there had been no preexisting impairment.

b. For actions filed on or after November 1, 1999, but before June 1, 2000, if the combined disabilities constitute partial permanent disability as defined in Section 3 of this title, then the employee shall receive full compensation as now provided by law for the disability resulting directly and specifically from the subsequent injury. The

¶ 10 At the end of the 2000 legislative session, the dissolution was completed when the Legislature discontinued benefits from the Fund for a material increase in combined disability resulting in permanent *total* disability. 2000 Okla. Sess. Laws ch. 248, § 12, emerg. eff. May 26, 2000. Curiously, the controlling event in the 2000 amendment[3]

employee shall not receive any additional compensation for the combined disability as above defined, after deducting therefrom the percent of disability that constituted the employee a "physically impaired person".

B. 1. For actions in which the subsequent injury occurred before June 1, 2000, if such combined disabilities constitute permanent total disability as defined in Section 3 of this title, then the employee shall receive full compensation as provided by law for the disability resulting directly and specifically from the subsequent injury. In addition, the employee shall receive full compensation for the combined disability, as above defined, all of which shall be computed upon the schedule and provisions of the Workers' Compensation Act. The employer shall be liable only for the degree of percent of disability which would have resulted from the subsequent injury if there had been no preexisting impairment. After all permanent partial disability payments by the employer or the insurance carrier of the employer have ceased, the remainder of the compensation shall be paid out of the Multiple Injury Trust Fund provided for in Section 173 of this title, in periodic installments. In permanent total disability cases the same may be paid in periodic payments, as set forth in Section 22 of this title, or may be commuted to a lump-sum payment, by agreement of the claimant and the Multiple Injury Trust Fund. The compensation rate for permanent total awards from the Multiple Injury Trust Fund shall be the compensation rate for permanent partial disability paid by the employer in the last combinable compensable injury. Permanent total awards from the Multiple Injury Trust Fund shall be payable for a period of five (5) years or until the employee reaches sixty-five (65) years of age, whichever period is the longer. Multiple Injury Trust Fund awards shall accrue from the file date of the court order finding the claimant to be permanently and totally disabled.

2. For actions in which the subsequent injury occurred on or after June 1, 2000, if such combined disabilities constitute permanent total disability, as defined in Section 3 of this title, then the claimant shall receive full compensation as now provided by law for the disability resulting directly and specifically from the subsequent injury. In addition, the claimant shall receive full compensation for the combined disability, as above defined, all of which shall be computed upon the schedule and provisions of the Workers' Compensation

was not a filing, but rather whether the injury occurred on or after June 1, 2000. The 2000 amendment also shifted liability for a material increase in disability caused by a combination of injuries resulting in permanent total disability to the subsequent employer. *See* Andrew D. Downing, *Oklahoma Employers Beware: The Rock and a Hard Place Dilemma,* 72 Okla. B.J.2055 (2001) (discussion of dissolution of Fund and interplay of 2000 amendment with Americans with Disabilities Act).

### Construction of the 1999 Amendment

■ ¶ 11 The dispute in this matter is the effect of the 1999 amendment on workers' claims for subsequent injuries filed but pending before the Workers' Compensation Court on November 1, 1999. Claimant persuaded the Court of Civil Appeals to apply the well-settled rule that the law in effect at the time of the subsequent injury controls in determining the liability of the Fund. *See Archer,*

847 P.2d at 794–795. The Fund argues that the Legislature intended to retroactively disallow any claim against the Fund not commenced by the filing of a valid form 3–f[4] before November 1, 1999. This Court's *de novo* review of the question of law presented reveals that neither argument is entirely correct as neither addresses the patent ambiguity contained in the 1999 amendment. Namely, that the term "action" in the phrase "for actions filed after October 31, 1999" could refer to an "action" for benefits for a subsequent injury. It could also refer to an "action" for benefits from the Fund following an adjudication of the degree of disability resulting from the subsequent injury. The issue is one of statutory construction.

■ ¶ 12 "The primary goal of statutory construction is to ascertain and follow the intention of the Legislature.... [W]here a statute is ambiguous or its meaning is uncertain it is to be given a reasonable construc-

---

Act. The employer shall be liable for the degree of percent of disability which would have resulted from the subsequent injury if there had been no preexisting impairment and for any material increase resulting from the material increase in injuries. Payment for the degree of disability resulting from the material increase in disability resulting from the combination of injuries may be paid in periodic installments or may be commuted to a lump-sum payment upon agreement of the claimant and the employer or insurance carrier for the employer. The compensation rate for permanent total award resulting from a combination of injuries shall be the compensation rate for permanent partial disability paid by the employer in the last combinable compensation injury. Permanent total awards resulting from a material increase in disability resulting from a combination of injuries shall be payable for a period of fifteen (15) years or until the claimant reaches sixty-five (65) years of age, whichever period is the longer. Such awards shall be paid from the date the court order finding the claimant to be permanently and totally disabled is filed. C. For all actions filed prior to November 1, 1999, before a physically impaired person can proceed against Multiple Injury Trust Fund, the preexisting permanent partial disability and the permanent partial disability from the last injury must exceed a total amount equal to forty percent (40%) to the body. D. Awards under this section shall abate upon the death, from any cause, of the employee. E. Reopening any prior injury claim other than the last employer injury claim shall not give a claimant the right to additional Multiple

Injury Trust Fund benefits or additional benefits from any employer or an insurance carrier for any employer, for a material increase in disability resulting from the combination of injuries. F. Awards that are not claimed within two (2) years of the date on which the award first becomes available shall be returned to the party who is responsible for payment of the award, less any attorney fees, as specified in the original court order awarding benefits for a material increase in disability resulting from a combination of injuries. Payment for attorney fees shall be made separately from payment to a claimant. If the claimant is subsequent found and claims the award, such award and interest as required by Section 42 of this title shall be paid to the claimant by the party who is responsible for payment of the award, within sixty (60) days of the claim.
Okla. Stat. tit. 85, § 172 (Supp.2000).

4. Rule 13A of the Workers' Compensation Court Rules provides:

C. The notation on the Form 3 or 3–b that the claimant is a previously impaired person shall not be deemed to commence a claim against the Multiple Injury Trust Fund. The Form 3–f must be filed in the claim in which benefits are sought and shall use that same Court claim number.
A timely filed Form 3 claim for benefits against the employer is deemed timely as to the Fund. *Special Indem. Fund v. Carlile,* 939 P.2d 26 (Okla.Ct.Civ.App.1997) (approved for publication by order of the Supreme Court).

tion, one that will avoid absurd consequences if this can be done without violating legislative intent." *TRW/Reda Pump v. Brewington 829 P.2d 15*, 20 (Okla.1992). Poor draftsmanship will not be allowed to defeat the purpose of the provision. *Id.*

¶ 13 Guided by these rules of construction, this Court concludes that the Legislature intended the term "action" to refer to a form 3 claim for benefits for the subsequent injury, not a form 3–f claim for benefits from the Fund. The 1999 amendment established an "action" to be the operative event in determining whether a claimant could receive benefits from the Fund for permanent partial disability. If the term "action" referred to the filing of a form 3–f there would be no reason to file one on or after November 1, 1999, as no compensation from the Fund would be recoverable. Yet, the statute unequivocally contemplates "actions" filed after that date. It is unlikely that the Legislature would have intended to tie the operative event in the statute to the filing of a form which, after October 31, 1999, would be ineffectual. Thus, the Legislature must have intended the term "action" to refer to the filing of a form 3 claim for benefits for the subsequent injury.

¶ 14 In addition, the Fund's proposed construction of the statute would apply the provision retroactively to claims for permanent partial disability pending on November 1, 1999. "Statutes are generally presumed to be prospective in application. This presumption is rebutted when there is legislative intent 'expressly declared' or 'necessarily implied from the language used.' Doubt must be resolved against retrospective application." *FOP Lodge No. 165 v. City of Choctaw*, 933 P.2d 261, 271 (Okla.1996) (citations omitted).

¶ 15 This Court's construction of the term "action" as a claim on the subsequent injury is consistent with the general rule that statutes apply prospectively. No expression of legislative intent to do otherwise appears in the statute, nor is it necessarily implied by

its terms. Thus, the 1999 amendment to section 172(A) applies prospectively[5] to deny benefits from the Fund when a form 3 claim for permanent partial disability was not filed before November 1, 1999. Claimant's form 3 was filed before that date and he is therefore entitled to benefits from the Fund.

¶ 16 The Court of Civil Appeals erred by applying the date of subsequent injury to this claim. That holding ignored the Legislature's express intent that the date of the filing of an "action" controls the application of the changes enacted by the 1999 amendment. The patent ambiguity presented by the term "action" required statutory construction. The opinion of the Court of Civil Appeals is therefore vacated. The Workers' Compensation Court's denial of benefits from the Fund, was also based on an erroneous interpretation of the applicable law. It is therefore vacated and the cause is remanded to the Workers' Compensation Court.

¶ 17 HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, BOUDREAU, and WINCHESTER, JJ., concur.

¶ 18 OPALA, KAUGER, and SUMMERS, JJ., concur in result.

---

**5.** Today's holding makes it unnecessary to address Claimant's assertion that, if applied to his claim, the 1999 amendment to section 172(A) would constitute a special law cutting off a vested right to benefits from the Fund in violation of due process.