2005 OK CIV APP 55

**SUPERIOR BRONZE & GRANITE OF AMERICA and Arch Insurance Company, Petitioners,**

v.

**Gregory A. COLE and the Workers' Compensation Court, Respondents.**

**No. 101,044.**

Court of Civil Appeals of Oklahoma, Division No. 3.

July 8, 2005.

D. Wade Christensen, Nick C. Linholm, Day, Edwards, Propester & Christensen, P.C., Oklahoma City, OK, for Petitioners.

Michael E. Utter, Oklahoma City, OK, for Respondent.

Opinion by LARRY JOPLIN, Presiding Judge.

¶ 1 Petitioners Superior Bronze & Granite of America and Arch Insurance Company (collectively, Employer) seek review of an order of a three-judge panel of the Workers' Compensation Court affirming that part of the trial court's order adjudicating Respon-

dent Gregory A. Cole (Claimant), a physically impaired person as defined by 85 O.S. § 171, permanently totally disabled (PTD) as a result of combined disabilities, and holding Employer liable for the materially increased disability under 85 O.S. § 172(B)(2). Having reviewed the record, however, we hold the order of the three-judge panel should be, and hereby is, sustained.

¶ 2 Claimant suffered a low back injury in a previous employment. By Joint Petition in February 2000, Claimant was adjudicated to have sustained three and one-half percent (3.5%) permanent partial disability (PPD) to the whole person.

¶ 3 Employer hired Claimant in April 2000. In October 2000, Claimant suffered an injury to his low back. The Workers' Compensation Court subsequently adjudicated Claimant to have suffered fifteen percent (15%) PPD to the whole person as a result of the injury to his low back while working for Employer, as well as previously unadjudicated PPD of fifteen percent (15%) to lungs and ten percent (10%) to the whole person, for a total of forty-three percent (43%) PPD to the whole person.

¶ 4 In February 2002, Claimant suffered an injury to his right foot and another injury to his low back while working for Employer. In July 2003, the Workers' Compensation Court determined that Claimant suffered an additional eighteen and one-half percent (18.5%) PPD to the whole person as a result of the latest compensable injuries.

¶ 5 In October 2003, Claimant filed his Form 3E, seeking benefits for PTD as a result of the combination of his previous disabilities and disability attributable to the latest injury. Claimant submitted to a vocational rehabilitation evaluation, and was determined suitable for retraining.

¶ 6 On consideration of the parties' evidence, the trial court adjudicated Claimant PTD as a result of the combination of pre-existing disabilities and disability attributable to the latest injury, holding Employer liable for payment of PTD. Apparently based on

Claimant's testimony concerning his inability to drive to/from his home in Stroud and retraining or a place of employment in Tulsa, and the potential hardship a relocation to Tulsa would cause to him and his family, the trial court also determined that vocational rehabilitation was "not ... practical."

¶ 7 Employer appealed. A three-judge panel modified the rate of compensation, but otherwise affirmed the order of the trial court.

¶ 8 In its first proposition, Employer complains that amended 85 O.S. § 172, effective May 26, 2000, improperly casts upon the last employer the burden of PTD from combined disabilities, prior to that date paid by the state-operated Multiple Injury Trust Fund (Fund), as an unconstitutional impairment of contractual obligations and a taking without just compensation and due process. U.S. Const. art. I, § 10, cl. 1; U.S. Const. amend. V; U.S. Const. amend. XIV, § 1. Here, Employer asserts amended § 172: (1) significantly and unreasonably increased its obligations under the contract of employment with Claimant by requiring it to accept a greater degree of responsibility for any on-the-job injury to Claimant after Claimant's hiring, amounting to an impermissible interference with the employment contract; and (2) shifted responsibility for combined increased PTD from the state-operated Fund to private employers, thereby impermissibly "taking" and "appropriating" employers' money to pay the state's liability for "other employers' injuries" without due process and just compensation.

■ ¶ 9 Claimant responds, first arguing that, by failing to raise the constitutional questions below, Employer has not preserved the constitutional questions for appellate review. *See, e.g., Johnson v. City of Woodward,* 2001 OK 85, ¶ 21, 38 P.3d 218, 226–227. Claimant secondly argues that, even if the constitutional questions have been properly preserved, amended § 172 merely signals a return to prior, constitutionally valid law. *See, Adams v. Iten Biscuit Co.,* 1917 OK 47, ¶¶ 0(6)-(7), 162 P. 938.[1] Ultimately, says

1. "The citizen has no property in a rule of law, and while rights which have accrued to him under the operation of existing laws and have

thereby become vested may not be taken away by a change of the rules, he cannot be heard to complain if the rule is changed before any rights

Claimant, the statute should be presumed valid unless invalid "beyond all doubt," and Employer has not shown such "beyond all doubt" invalidity in the present case. *See, e.g., Standard Co. Dairy v. Allen,* 1940 OK 408, ¶ 22, 108 P.2d 164, 167.[2]

¶ 10 The Oklahoma Supreme Court has twice noted the legislative dismantling of the Fund, and the consequent shift of liability for PTD resulting from the combination of disabilities from the Fund to the last employer. *Multiple Inj. Trust Fund v. Pullum,* 2001 OK 115, ¶ 13, 37 P.3d 899, 906; *Autry v. Multiple Injury Trust Fund,* 2001 OK 79, ¶ 10, 38 P.3d 213, 216. However, in neither case did the Supreme Court address the constitutional implications of that shift of liability. *See, Autry,* 2001 OK 79, ¶ 15, 38 P.3d at 218, fn. 5.[3]

¶ 11 The liability of the Fund and employers to a "physically impaired person" for materially increased disability as a result of combination of disabilities was and is entirely statutory. 85 O.S. Supp.2000 §§ 171, 172; *Special Indem. Fund v. Hulse,* 1967 OK 219, ¶ 12, 441 P.2d 366, 368. A claimant's right to receive, and an employer's obligation to pay, benefits for increased disability as a result of the combination of disabilities were and are fixed by the terms of § 172 at the time of the latest injury. *Pullum,* 2001 OK 115, ¶¶ 9, 19, 37 P.3d at 904, 907; *Special Indem. Fund v. Archer,* 1993 OK 14, ¶ 9, 847 P.2d 791, 794–795. So, just as the Legislature initially

created the Fund and defined the extent of the Fund's liability, the Legislature was permitted to subsequently redefine and restrict the outside limits of Fund's liability, or indeed, dismantle the Fund altogether, subject only to constitutional limits on legislation, and particularly the Oklahoma Constitutional provisions proscribing retroactive legislation and impairment of vested rights. Ok. Const. art. II, § 15; Ok. Const. art. V, §§ 52, 54; *Rivas v. Parkland Manor,* 2000 OK 68, ¶¶ 22, 24, 12 P.3d 452, 458.

■ ¶ 12 We discern no unconstitutional impairment of contract. First, the dismantling of the Fund had long been foreshadowed. *Autry,* 2001 OK 79, ¶¶ 8, 10, 38 P.3d at 215.[4] Employer had no reasonable expectation that Fund would continue to bear liability for PTD as a result of combination of disabilities after the May 2000 effective date of amended § 172. *See, Romein v. General Motors Corp.,* 436 Mich. 515, 462 N.W.2d 555, 563 (1990).[5]

¶ 13 Second, Employer adduced no evidence of an express contract with Claimant governing the extent of workers' compensation benefits Claimant would receive or Employer would be obligated to pay. By the implied terms of an employment contract, the parties agreed to abide by the law in effect at the time of the injury. *Harris v. National Truck Service,* 56 Ala.App. 350, 321 So.2d 690, 693–694 (Civ.App.1975).[6]

have accrued to him thereunder"; the Workmens' Compensation Law, "chapter 246 of Sess. Laws 1915 does not deprive an employee, injured after its passage, of property without due process of law, nor does it deprive such employee of the equal protection of the law."

2. "The rule is that every presumption is in favor of the constitutionality of legislative enactments and that they should not be declared invalid unless their invalidity clearly appears. It is sometimes said that a statutory enactment must be upheld unless its invalidity appears beyond all doubt."

3. "Today's holding makes it unnecessary to address Claimant's assertion that, if applied to his claim, the 1999 amendment to section 172(A) would constitute a special law cutting off a vested right to benefits from the Fund in violation of due process."

4. "In 1994, a joint legislative committee was created to study the Fund including '[a] determi-

nation of the impact that dissolution of the [Fund] would have on businesses located in this state.' Okla. Stat. tit. 85, § 172 (Supp.1995). In 1999, dissolution of the Fund began with the amendment of section 172(A)"; "At the end of the 2000 legislative session, the dissolution was completed when the Legislature discontinued benefits from the Fund for a material increase in combined disability resulting in permanent total disability." (Footnotes omitted.)

5. "[T]he employers were on notice of the legislative debate regarding the proposed changes in the law[,] but [r]eliance on an area of law that is in a state of flux is not reasonable reliance."

6. "... [T]he legislature is free to change the provisions of a compensation law up until the time of injury. However, because the employer and employee have implicitly contracted to abide by the compensation scheme in effect at the moment of injury, any attempt to amend the

¶ 14 Third, where the right to a particular benefit has not become fixed, an employer suffers no impairment of any contractual obligation by a statutory change in benefits enacted after the injury. *See, Sherman v. Whirlpool Corporation,* 386 N.W.2d 221, 225 (Minn.1986).[7] Under Oklahoma law, Employer's liability for combined, increased disability did not become fixed at the time of the hiring, but rather, at the time of the latest compensable injury while Claimant worked for Employer. *Archer,* 1993 OK 14, ¶ 9, 847 P.2d at 794–795.

■ ¶ 15 In short, we hold Employer had no vested right to Fund's payment of benefits for PTD resulting from a combination of disabilities under the previous version of § 172, where as here, the latest injury occurred after the effective date of the 2000 amendment. *See, Adams,* 1917 OK 47, ¶ 0(6), 162 P. 938. Employer has consequently suffered no constitutionally proscribed impairment of contract, nor suffered a proscribed "taking." Additionally, Employer has been accorded all the process it was due below when afforded an opportunity to appear and defend on the merits. *See, e.g., Wood v. Indep. School Dist. No. 141 of Pottawatomie County, Oklahoma,* 1983 OK 30, 661 P.2d 892; *First Nat'l. Bank v. Okla. Savings and Loan Bd.,* 1977 OK 171, 569 P.2d 993.

¶ 16 In its second proposition, Employer complains the lower court erred as a matter of law when it determined vocational rehabilitation was "not . . . practical." In this proposition, Employer argues that 85 O.S. § 16(A) requires an evaluation and adjudication of the "practicability" of vocational rehabilitation; that 85 O.S. § 16(B), (C) and (D) provide remedies for all the "practical" impediments to retraining, particularly, by allowing an extended period for retraining, as well as payments for housing and compensation during retraining; and, accordingly, that

vocational rehabilitation is not "practicable" under § 16 *only* when a claimant is *physically incapable* of being retrained and returned to the workforce. In its third proposition, Employer complains that, for error in the application of § 16, and considering the evidence of its examining physician and the independent medical examiner releasing Claimant from treatment, the adjudication of Claimant's PTD as a result of the combination of disabilities is unsupported by competent evidence.

■ ¶ 17 "No person shall be adjudicated to be permanently and totally disabled unless first having been evaluated as to the practicability of restoration to gainful employment through vocational rehabilitation services or training." 85 O.S. § 16(A). "[A]n injured worker is considered permanently and totally disabled only if the worker cannot be restored to gainful employment following a period of rehabilitation." *Mangrum v. Fensco, Inc.,* 1999 OK 78, § 6, 989 P.2d 461, 463. We review to determine whether competent evidence supports the lower court's determination. *Klinger v. Thorn Apple Valley,* 1999 OK CIV APP 94, ¶ 5, 990 P.2d 331, 332.

■ ¶ 18 In the present case, the report of the vocational rehabilitation evaluator suggested that, commensurate with his physical limitations, Claimant would be a candidate for retraining as a Surveillance System Monitor, and recommended an appropriate course at a training center in Broken Arrow, Oklahoma. However, the evaluator also noted that, due to his physical limitations, Claimant had "an extremely narrow range of opportunity" for reemployment in some appropriate unskilled sedentary work, but that "sedentary work at an unskilled level in Oklahoma represents only about 2½% of the labor market."

---

compensation schedule after the injurious accident can have no bearing on the award given, and if such retrospective application is given the amendment, then an unconstitutional impairment of contract obligations occurs . . . ."

**7.** Held: application of new workers' compensation rehabilitation statute to worker injured prior

to enactment of statute did not unconstitutionally impair obligation of contracts as to employer and insurer where rehabilitation obligations of employer and insurer had not become fixed and vested pursuant to prior rehabilitation statute when new rehabilitation statute was enacted.

¶ 19 Claimant testified, and presented competent medical evidence, that, due to his physical limitations, he could not perform the duties of his previous employments. Claimant also testified that, due to his physical limitations and medications, he could not drive himself to and from the recommended retraining site in Broken Arrow. Claimant said that, even if retrained, any opportunity for reemployment would require the disruptive relocation of his family to the Tulsa area and his Wife's resignation of her current employment.

¶ 20 Claimant's testimony and evidence, when combined with the report of the vocational rehabilitation expert, is competent to support the conclusion that, due to his physical limitations, he was physically unable to reach the retraining center, or indeed, to seek reemployment in an area within his retraining, without a major disruptive relocation of his family from Stroud to Tulsa, and that even if retrained, Claimant's opportunity for reemployment was remote. This evidence is also competent to support the conclusion that restoration to gainful employment through retraining was not practicable.

¶ 21 The order of the three-judge panel is consequently SUSTAINED.

HANSEN, J., and BUETTNER, C.J., concur.