**SPECIAL INDEMNITY FUND, Petitioner,**

v.

**James J. ARCHER, and the Workers' Compensation Court, Respondents.**

**No. 77467.**

Supreme Court of Oklahoma.

Feb. 23, 1993.

---

27. *Poafpybitty,* and its progeny, *supra* note 10.

John R. Schneider, Stacey A. Lobaugh, Oklahoma City, for petitioner.

Richard A. Bell, Norman, for respondent Archer.

LAVENDER, Vice Chief Justice.

■ The question we answer in this case is whether two simultaneous injuries occurring on September 30, 1984 which were separately adjudicated before the Oklahoma Workers' Compensation Court (OWCC) against the employer may thereafter be combined to support an award against the Special Indemnity Fund based on a material increase in impairment? We answer in the negative.

James J. Archer (claimant) worked for the City of Tulsa Fire Department. In 1987 he brought two separate claims against the City for permanent partial impairment under our Workers' Compensation Act, 85 O.S.1981, § 1 et seq., as amended. Both claims were for cumulative based trauma, one to his hearing caused by noise exposure and one to his lungs and respiratory system, caused by inhalation of airborne irritants. By two separate Joint Petitions the City and claimant moved to settle the claims. A trial judge of the OWCC approved the Joint Petitions on August 10, 1989, awarding specific amounts of compensation for each injury, which were both found to have occurred on or about September 30, 1984.[1] Thereafter claimant brought a claim against the Special Indemnity Fund (Fund) for a material increase in impairment based on a combination of the two separately adjudicated claims. Fund asserted liability was improper because at the time of the injuries, simultaneously occurring injuries were *not* combinable for a material increase against it. It asserted only after a 1986 amendment to 85 O.S.1981, § 171 [85 O.S.Supp. 1986, § 171] did the Legislature intend to allow combination of separately adjudicated injuries arising at the same time to support an award for material increase against the Fund.[2]

---

1. Claimant admits in his appellate briefs both injuries occurred simultaneously and the last date of exposure to noise or respiratory irritants was September 30, 1984. July 13, 1992 Response to Petition for Certiorari and Motion to Tax Costs for Frivolous Appeal. pp. 1–2; September 9, 1991 Answer Brief of Respondent, pg. 1. We note this admission because although the transcript of the April 9, 1991 hearing on material increase against the Fund *would* support a finding on the simultaneous nature of these two cumulative trauma injuries and last date of exposure as being September 30, 1984 by virtue of statements made by claimant's counsel and testimony given by claimant, certain medical reports seem to indicate claimant was still working for the City as late as January 1988 and submissions by the City prior to settlement of the two underlying claims which are a part of this appellate record also seem to indicate

claimant was still working for the City in 1987. No explanation is afforded by this record as to this apparent discrepancy. However, in view of claimant's admissions in his appellate briefs that the injuries were simultaneous and the last date of exposure was September 30, 1984 we view the injuries as occurring simultaneously. Admissions in an appellate brief are acceptable as material supplementing the record. *Deffenbaugh v. Hudson*, 791 P.2d 84, 85 f.n. 3 (Okla.1990).

2. We note in view of the manner in which we dispose of this case we need not definitively determine whether the 1986 amendment to § 171 would allow separately adjudicated simultaneous injuries occurring after the amendment's effective date to be combined against the Fund for a material increase in impairment

The trial tribunal granted an award against the Fund and the Court of Appeals affirmed, essentially ruling that although both injuries occurred in 1984 the 1986 amendment applied because claimant had no claim against the Fund until one of the two claims against the employer were adjudicated; only then would he be considered a physically impaired person entitled to additional benefits for a material increase. We have previously granted certiorari.

85 O.S.1981, § 171, the provision in effect in 1984 provided in pertinent part as follows:

> For the purpose of Sections 171–176 ... the term "physically impaired person" is hereby defined to be a person who as a result of accident, disease, birth, military action, or any other cause, has sustained an injury to any part of the body or a specific member thereof such as is obvious and apparent from observation or examination by an ordinary layman, that is, a person who is not skilled in the medical profession, or any disability which previously has been adjudged and determined by the State Industrial Court of the State of Oklahoma [or] a judge of the Workers' Compensation Court of Oklahoma ...; provided, further, that any disability previously adjudicated by any such court ... whose duty it is to adjudicate disability under workers' compensation claims, or any disability or combination of disabilities herein set out, or set out in Section 22 of this title under the "other cases" provisions of the Workers' Compensation Act of the State of Oklahoma ... shall be prima facie evidence that the claimant is a "physically impaired person" to such an extent that the Court shall have jurisdiction to hear and determine the nature and extent of any increase in disability by reason of the combination of such multiple disabilities.

Section 171 after its 1986 amendment provided in pertinent part:

> For the purpose of Sections 171 through 176 ... the term "physically impaired person" is hereby defined to be a person

who as a result of accident, disease, birth, military action, or any other cause, has suffered the loss of the sight of one eye, the loss by amputation of the whole or a part of a major member of his body, or the loss of the use or partial loss of the use of a major member such as is obvious and apparent from observation or examination by an ordinary layman, that is, a person who is not skilled in the medical profession, or any disability which previously has been adjudged and determined by the Workers' Compensation Court *including all separately adjudicated injuries and adjudicated occupational diseases even though arising at the same time.* (emphasis added)

In addition to § 171 the provisions of § 172 are relevant to our disposition. At the time of the 1984 injuries 85 O.S.1981, § 172(A) provided:

> If an employee who is a "physically impaired person" receives an accidental personal injury compensable under the Workers' Compensation Act which results in additional permanent disability so that the degree of disability caused by the combination of both disabilities is materially greater than that which would have resulted from the *subsequent* injury alone, the employee shall receive compensation on the basis of such combined disabilities, as is now provided by the laws of this state. If such combined disabilities constitute partial permanent disability as now defined by the Workers' Compensation Act of this state, then such employee shall receive full compensation as now provided by law for the disability resulting directly and specifically from such *subsequent* injury, and in addition thereto such employee shall receive full compensation for his combined disability as above defined, after deducting therefrom the percent of that disability that constituted the employee a "physically impaired person", as defined herein, all of which shall be computed upon the schedule and provision of the Workers' Compensation Act of this state. Provided the employer shall be liable

and/or under what circumstances such combination would be appropriate.

only for the degree of percent of disability which would have resulted from the *latter* injury if there had been no preexisting impairment. .... (emphasis added)

The Special Indemnity Fund Act was originally enacted in 1943. *Special Indemnity Fund v. Figgins*, 831 P.2d 1379, 1381 (Okla.1992). We have long recognized the legislative purpose of the Act to be relief against the inability of many, otherwise employables, who suffered previous impairment to obtain employment. *Special Indemnity Fund v. Wade*, 199 Okl. 547, 189 P.2d 609, 610 (1948). Another, but related, purpose was to protect employers from the full responsibility for the combination of old and new disabilities so that the employer can, without fear, employ or retain previously impaired workers. *See J.C. Penney Co. v. Crumby*, 584 P.2d 1325, 1328–1329 (Okla.1978); *Special Indemnity Fund v. Figgins, supra* at 1381; *See also Special Indemnity Fund v. Treadwell*, 693 P.2d 608, 610 (Okla.1984) (purpose of Fund is to encourage employment of previously impaired workers by assuring employers they will only be responsible for payments stemming from a subsequent injury as though the worker were not previously impaired); *Special Indemnity Fund v. Scott*, 652 P.2d 278, 280 (Okla.1982) (Fund was created to remove barrier to employment of physically impaired persons and to relieve employers from liability for disabilities not resulting from work-related injuries).

The overriding rationale behind the Act is illustrated succinctly in *Figgins, supra* at 1381. There we stated:

> Before creation of the Indemnity Fund, it was extremely difficult for physically impaired persons to obtain employment. If an impaired person suffered an on-the-job injury causing additional disability because the injured employee was a physically impaired person, full responsibility for compensation fell on the employer or insurance carrier. A strict enforcement of the full responsibility rule created a natural reluctance on the part of employers to hire or retain employees suffering from an obvious handicap. In *Nease v. Hughes Stone Co.*, 114 Okl. 170,

244 P. 778, 780 (1925), this Court held that a person who, when hired, had the use of only one eye was entitled to permanent total disability when he suffered the loss of the second eye in an on-the-job injury. The employer in *Nease* asserted that because the employee lacked the use of one eye when he was hired, he was only entitled to compensation for the scheduled loss of one eye. Under the Court's ruling, the employer was liable for the totality of the disability awarded. According to 2 Larson, *The Law of Workmen's Compensation*, p. 10–492,-397, § 59.31(a) (Matthew Bender 1992), within 30 days following the pronouncement of the non-apportionment rule in *Nease* between seven and eight thousand one-eyed, one-legged, one-armed, and one-handed workers were displaced in Oklahoma.

As appears obvious to us allowance of recovery against the Fund for simultaneous injuries, in other words, those injuries occurring at the same time, does not further the purpose of either employment or retention of previously impaired workers. This is so because at the time of the two simultaneous injuries there simply was no preexisting impairment for which the employer could conceivably be liable under the rule we announced in *Nease*. Thus, although we have recognized the provisions of the Special Indemnity Fund Act are remedial in character and are to be liberally construed to effectuate the legislative purpose [*Special Indemnity Fund v. Wade, supra* 189 P.2d at 610] allowance of an award against the Fund when the injuries are simultaneous simply does not effectuate the legislative purpose(s) of the Act we have recognized for over forty (40) years.

The Court of Appeals in affirming the award in these circumstances ignored the purpose(s) behind the Act as it existed in 1984 and came to the conclusion the 1986 amendment should be applied. We do not agree with such conclusion for the reason we have held the law in effect at the time of the subsequent injury is the law to be

used in fixing the liability of the Fund.[3] *Special Indemnity Fund v. Pogue*, 389 P.2d 629, 630 (Okla.1964); *Special Indemnity Fund v. Acuff*, 383 P.2d 630, 632–633 (Okla.1963); *Nelson v. Rialto Mining Co.*, 194 Okl. 628, 154 P.2d 87, 89–90 (1944) (dicta). Such a determination on our part in regard to liability of the Fund is consistent with the general rule applied in workers' compensation matters that the law in effect at the time of injury controls the right to compensation and the obligation to pay benefits. *Knott v. Halliburton Services*, 752 P.2d 812, 813 (Okla.1988); *Special Indemnity Fund v. Michaud*, 345 P.2d 891 (Okla.1959) (Syllabus by the Court); *Washabaugh v. Bartlett Collins Glass Co.*, 177 Okl. 159, 57 P.2d 1162, 1164 (1936). Furthermore, such rule is consistent with 85 O.S.1981, § 3.6(D) which provides in pertinent part, "[b]enefits for an injury shall be determined by the law in effect at the time of the injury...." [4] Therefore, in that *both* injuries for which compensation is sought occurred in 1984 the law in effect at that time would be applicable and not a 1986 amendment.

Although claimant contends in his appellate submissions the practice before the OWCC, even before the 1986 amendment, was to allow recovery against the Fund for separately adjudicated simultaneous injuries, in our view, the Legislature never contemplated or intended such a result. As recently as last year we set out what a claimant must show before an award can be sustained against the Fund. *Special Indemnity Fund v. Figgins, supra*, 831 P.2d at 1382 and n. 10. Under § 172(A) he must show he is a physically impaired person as defined by statutory law (i.e. § 171); that he suffered a *subsequent* injury, compensable under the Workers' Compensation Act, which resulted in further impairment or disability; the pre-existing impairments may be combined with the *last* compensable accident; the disability resulting from the combination of the *new* injury with *prior* impairments is materially greater than would result from the *last* injury standing alone. *Special Indemnity Fund v. Figgins, supra* at 1382 and n. 10; *Reynolds v. Special Indemnity Fund*, 725 P.2d 1265, 1267–1268 (Okla.1986); *Special Indemnity Fund v. Scott, supra*, 652 P.2d at 280; *See also Special Indemnity Fund v. Pogue, supra*, 389 P.2d at 630–631 (a pre-existing disability is one which antedates a claimant's last compensable injury).

■ These elements or parameters, as the cases above unequivocally hold, were legislatively required to exist prior to any liability attaching to the Fund. Here the claim against the Fund fails for the reason there was no *prior* and there was no *subsequent* injury for the simple reason the injuries occurred simultaneously. Accordingly, under the statutory scheme as it existed in September 1984 there could be no liability against the Fund for separately adjudicated simultaneously occurring injuries under the then existent statutory scheme.[5]

For the reasons specified in this opinion, the Court of Appeals opinion is VACATED and WITHDRAWN FROM PUBLICATION and the order of the Oklahoma Workers' Compensation Court is VACATED.

---

**3.** Of course here, in view of the fact these two injuries occurred simultaneously, there in actuality has never been a subsequent injury which would bring into play the applicability of Fund liability in the first place under 85 O.S.1981, § 172 and clear and unambiguous case law requiring a *subsequent* injury as a prerequisite to Fund liability. We will discuss these matters later in the text, as providing another reason no liability against the Fund was legislatively intended at the time of these 1984 injuries.

**4.** Current law continues to provide "[b]enefits for an injury shall be determined by the law in effect at the time of injury...." 85 O.S.1991, § 3.6(D).

**5.** Confirming our view of the law as it existed in 1984 before the 1986 amendment to § 171 is the maxim of statutory construction that where a former statute is clear or its meaning has been judicially determined, legislative amendment may reasonably indicate a legislative intent to alter the law. *Special Indemnity Fund v. Figgins*, 831 P.2d 1379, 1382 (Okla.1992); *Irwin v. Irwin*, 433 P.2d 931, 934 (Okla.1965). In that § 171 read in conjunction with § 172 had been the subject of extensive judicial construction which required a subsequent injury, the amendment in 1986 may reasonably indicate a legislative intent to somehow alter the law as it then existed.

SIMMS, HARGRAVE, OPALA, KAUGER, SUMMERS and WATT, JJ., concur.

ALMA WILSON, J., concurs in result.