1997 OK 99

**SPECIAL INDEMNITY
FUND, Petitioner,**

v.

**Richard S. ESTILL and The Workers'
Compensation Court,
Respondents.**

No. 87695.

Supreme Court of Oklahoma.

July 8, 1997.

Georgiana Peterson, Henry A. Meyer, III, Oklahoma City, for Petitioner.

W.C. Doty, Norman, for Respondents.

ALMA WILSON, Justice:

¶1 The question presented on certiorari is whether the evidence was sufficient to prove that the claimant was a physically impaired person by an obvious and apparent loss of use of a major member of the body pursuant to 85 O.S.1991, § 171. We answer in the affirmative. We vacate the opinion of the Court of Civil Appeals and affirm the Workers' Compensation Court award against the Special Indemnity Fund.

1. The Special Indemnity Fund stipulated to the percentages of permanent disability to the body as a whole caused by the two work-related injuries that were adjudicated on joint petitions.

2. Gwendolyn Sue Wood testified that she has known Estill since he was thirteen years old;

¶2 Richard S. Estill, respondent (Estill), was eight years old in 1951 when he was diagnosed with polio. Five years later, when Estill was thirteen years of age, his legs and feet would drag when he walked, he had trouble with his speech, and he had difficulty with his hand and arm coordination. Notwithstanding the polio-caused condition, Estill worked for the Oklahoma Department of Human Services for twenty-six years, primarily as a tractor-trailer truck driver hauling commodities.

¶3 During the course of employment, Estill suffered two on-the-job injuries that were adjudicated by the compensation court.[1] The first injury occurred in February, 1991, when Estill was standing on the tire of a semi-truck tightening a bolt under the hood and fell on his left side. After this injury, Estill suffered greater pain in his left leg, greater loss of use of his left arm and the trembles in his left arm worsened to a shaking, resulting in a 2.16% permanent partial disability to the body as a whole. The second occurred in July, 1991, when Estill fell on his right shoulder and wrist in the commodity warehouse. After this injury, Estill suffered loss of use of his right arm, resulting in a 4.3% permanent partial disability to the body as a whole.

¶4 Estill's polio-caused impairments seriously worsened after the two injuries in 1991, and he had to retire from the Department of Human Services in 1993 because of his inability to perform any duties. By 1995, Estill had difficulty eating solid foods, needed a walker to walk, and had a substantial loss of use of his arms and hands. He filed a claim for permanent total disability against the Special Indemnity Fund, petitioner (Fund). At trial, Estill presented a lay witness who testified that after Estill had polio she observed that his legs and feet would drag when he walked and that he had difficulty with his speech and his hand and arm coordination and that his polio-caused impairments have worsened substantially since 1991.[2] Es-

that at that time, which was five years after he was afflicted with polio, she observed the loss of use of his legs and loss of arm and hand coordination which resulted from the polio disease, T. at 22–23. She also testified she has seen him often over the past 36 years, as their families are

till also presented medical evidence that the loss of use of his left arm and left leg caused by his childhood polio was obvious and apparent and pre-existed his work-related injuries and that because of his polio-caused impairment he has a 50% disability to the body as a whole.[3] The Fund presented medical evidence that Estill has a 15% disability to the body as a whole due to his polio-caused impairment to his left leg, arm and hand, but the impairment is not obvious and apparent.[4] The Workers' Compensation Court awarded Estill benefits from the Special Indemnity Fund for permanent and total disability and a three-judge panel of the compensation court affirmed the award.[5]

¶ 5 The Court of Civil Appeals found that there was little evidence that the polio-caused impairments were obvious and apparent before the work-related injuries and that the evidence was more supportive of the fact that the polio symptoms were aggravated by the work-related injuries and only became obvious and apparent thereafter. The Court of Civil Appeals held the evidence was insufficient to establish that Estill was a physical-

ly impaired person by reason of his loss of use of his left arm and leg that would be obvious and apparent to an ordinary lay person and reversed the award.

¶ 6 On certiorari, Estill asserts that the Court of Civil Appeals totally disregarded the lay testimony that he had an observable disease-caused physical impairments, as well as the medical evidence that his childhood polio caused permanent disability to the body as a whole. Estill argues that the any-competent-evidence test in *Parks v. Norman Municipal Hospital*, 684 P.2d 548 (Okla. 1984),[6] governs this matter, but even under the independent-review test in *Special Indemnity Fund v. Scott*, 652 P.2d 278 (Okla. 1982), the Court of Civil Appeals may not totally ignore the evidence and facts. The Fund responds that the question on certiorari is whether the Court of Civil Appeals "made an appropriate 'weighing evidence' review." Citing *Special Indemnity Fund v. Choate*, 847 P.2d 796 (Okla.1993) and *Special Indemnity Fund v. Scott*, supra, the Fund contends that the Court of Civil Appeals

close friends; that she lives in the same apartment complex where Estill lives; that his polio-caused impairments—dragging of his legs and feet when he walked and difficulty in coordinating his arm and hand movements—worsened after 1991, T. at 23; and that in the late 1980's and early 1990 he was not doing as poorly as he was at the time of trial, T. at 25.

3. The report of Dr. M. was admitted into evidence over the Fund's probative value objection that "it's incredulous that Dr. M. found permanent total disability as a result of combination of these injuries" ["two adjudications for about six percent disability"], T. at 26. Dr. M.'s report reads:

As a young lad, Mr. Estill had polio which caused severe weakness of his left arm and left leg. As a result of his polio, he can no longer write well, he can't lift over 5 pounds, he has to use a four prong cane to walk, and even though this is an obvious and apparent injury, it is a very devastating and debilitating injury. EXTENT OF IMPAIRMENT: ... due to his polio and left side weakness ... he has 50% permanent partial disability to the body as a whole which is an obvious and apparent injury....

4. The report of Dr. Y., was admitted into evidence over Estill's probative value objection that it "assigns 15% for ... the polio and says it's not obvious and apparent and anyone in this court-

room can look at this man and say it was obvious." Dr. Y.'s report reads:

The first injury occurred at age eight (8) when he developed polio ... In my opinion, due to this man's first injury, he sustained fifteen (15) percent permanent partial disability to the body as a whole for injuries to the left leg, left arm, and left hand, but this injury is not obvious and apparent....

5. The Workers' Compensation Court found that "at the time of claimant's latest compensable injury of July 12, 1991, claimant was a previously physically impaired person by reason of the following:

OBVIOUS AND APPARENT–POLIO AFFECTING LEFT ARM AND LEFT LEG—30% BODY AS A WHOLE
FEBRUARY 27, 1991—LEFT SHOULDER, LEFT ARM, BACK and NECK—2.16% BODY AS A WHOLE"

6. *Parks v. Norman Municipal Hospital*, supra, held that a three-judge panel reviews the findings of fact of the presiding compensation court judge for clear and convincing evidence and where the three-judge panel substituted its findings for those of the presiding judge, the appellate courts review the three-judge panel's findings of fact for any competent evidence. In this matter, the three-judge panel did not disturb the presiding judge's findings of fact, hence, *Parks* is inapposite.

correctly considered and weighed Estill's lay testimony and that the evidence supports a finding that the polio symptoms were not obvious and apparent until after the 1991 adjudicated injuries, hence Estill had no pre-existing obvious and apparent impairment and the Fund had no liability.

¶ 7 The basic rules governing awards against the Special Indemnity Fund, and appellate review thereof, have been in place for half a century. The Special Indemnity Fund Act[7] is remedial in nature and its provisions are liberally construed to effectuate the legislative purpose.[8] The provisions of the Special Indemnity Fund Act may be invoked where the claimant has a pre-existing condition that caused a loss of use of a member of the body and there is proof that the loss of use is sufficiently pronounced that an ordinary person could discover it.[9] Whether a claimant is a physically impaired person within the meaning of the Special Indemnity Fund Act is a question of fact to be determined by the compensation court from all the evidence.[10] Competent lay testimony alone or in conjunction with competent expert medical proof that the claimant had an obvious and apparent loss of use of a specific member of the body is sufficient evidence to prove the fact that the claimant is a physically impaired person under the Special Indemnity Fund Act.[11] Where the claimant presents competent evidence that the pre-existing unadjudicated impairment affected, either in whole or in part, the use of a specific member of the body, the compensation court has jurisdiction to award Special Indemnity Fund benefits.[12] And, all the evidence tending to prove the fact of physical impairment will be independently reviewed by the appellate courts to determine if the claimant is a physically impaired person.[13]

¶ 8 The definition of "a physically impaired person" is set out in 85 O.S.1991, § 171, which reads:

For the purpose of Sections 171 through 176 of this title, the term "physically impaired person" is hereby defined to be a person who as a result of accident, disease, birth, military action, or any other cause, has suffered the loss of sight of one eye, the loss by amputation of the whole or a part of a major member of his body, **or the loss of use or partial use of a major member such as is obvious and apparent from observation or examination by an ordinary layman,** that is, a person who is not skilled in the medical profession, or any disability which previously has been adjudged and determined by the Workers' Compensation Court including all separately adjudicated injuries and adjudicated occupational diseases even though arising at the same time.

(Emphasis added.)

¶ 9 Some fifty years ago, *Special Indemnity Fund v. Keel*, 196 Okla. 315, 164 P.2d 996 (1945), delineated the lay evidence needed to prove the fact that loss of use of a major member is obvious and apparent—it must be specific evidence directed to the fact.[14] Keel had been involved in an automobile accident in 1937, injuring his left shoulder and an on-the-job accident in 1943, injuring his right shoulder. During the proceedings on Keel's claim for compensation for the job-related injury, the Industrial Commission brought the Fund in as a party.

---

7. 85 O.S.1991, §§ 171, et seq.

8. *Special Indemnity Fund v. Wade*, 199 Okla. 547, 189 P.2d 609, 610 (1948), and *Special Indemnity Fund v. Archer*, 847 P.2d 791, 794 (Okla.1993).

9. *Special Indemnity Fund v. Keel*, 196 Okla. 315, 164 P.2d 996, 997 (1945), and *Special Indemnity Fund v. Figgins*, 831 P.2d 1379, 1385 (Okla. 1992).

10. *Special Indemnity Fund v. Keel*, supra, and *Special Indemnity Fund v. Choate*, supra.

11. *Special Indemnity Fund v. Keel*, supra; *Special Indemnity Fund v. Roberts*, 356 P.2d 561

(Okla.1960); and *Special Indemnity Fund v. Scott*, supra.

12. *Special Indemnity Fund v. Roberts*, supra; *Special Indemnity Fund v. Choate*, supra.

13. *Special Indemnity Fund v. Hunt*, 200 Okla. 1, 190 P.2d 795 (1948); *Threatt v. Special Indemnity Fund*, 571 P.2d 465 (Okla.1977); *Special Indemnity Fund v. Scott*, supra; and *Special Indemnity Fund v. Choate*, supra.

14. *Special Indemnity Fund v. Keel*, 164 P.2d at 998.

Finding the prior injury to Keel's left shoulder impaired the use of his left arm, the Commission entered an award against the Fund. On appeal, the Fund contended the evidence did not bring Keel within the definition of "physically impaired person." The *Keel* Court agreed with the Fund, saying:

Two witnesses testified that he complained frequently of pain in his left shoulder while working and that they had observed a knot on his shoulder, although, on cross examination, they revealed they did not remember on what shoulder the knot existed. One of the witnesses was present and on the witness stand when claimant removed his shirt and exhibited his injured shoulder, but the witness could not determine on which shoulder he had previously seen the knot. **They did not testify that they had noticed either by observation or examination that claimant had lost any use of said arm** ... While we think it was proper for the Trial Commissioner to permit the exhibition of claimant's injury to him in aid of the testimony of other witnesses, yet such exhibition, standing alone, in this case involving a loss of use of a specific member by reason of an injury to the body, is not sufficient to take the place of specific evidence directed to this point.

(Emphasis added.)

¶ 10 Shortly after *Keel, Special Indemnity Fund v. Hunt,* 200 Okla. 1, 190 P.2d 795 (1948), explained that the Industrial Commission, an administrative fact finding board, must determine its jurisdiction and show the existence of jurisdiction of record;[15] and that definition of "physically impaired person" is a precedent to the Industrial Commission's jurisdiction over the Fund and, on appeal, the evidence thereon will be weighed and determined independently of the Commis-

sion's general finding of "physically impaired person";[16] but, on appeal, the sufficiency of the evidence on the question of the nature and extent of an injury, old or new, is tested by a different rule—a rule of "any evidence tending to support the finding of the Commission."[17] In *Hunt,* the Commission had entered a general finding that Hunt was a "physically impaired person." The Court concluded that Hunt's physical impairment must have been a partial loss of the use of a specific member such as is obvious and apparent from observation or examination by an ordinary lay person. The *Hunt* Court reviewed the evidence to make its independent determination as to whether the "previously impaired person" status was shown by competent proof. In finding the evidence to be sufficient, the *Hunt* Court said:[18]

The evidence tends to show that claimant's old injury broke both bones of the leg below the knee; that there was a knot on the leg in close proximity to the situs of the old fracture; that the leg by reason of the old injury was deformed; 'that he looks like he had a disability'; that he 'has a bad leg'; that he has a 40 per cent permanent partial disability to the leg.

This evidence is sufficient to support a finding, if made, that there existed a partial loss of use of a specific member, apparent to an ordinary layman upon examination. . . .

■ ¶ 11 The present Workers' Compensation Court, by statute, is more than an administrative fact finding board, as was its early predecessor, the Industrial Commission. Notwithstanding, we have consistently adhered to the independent-review standard when the jurisdictional facts supporting an award against the statutory Special Indemnity Fund are questioned.[19] We reaffirm our standard of independent review of the pre-

---

15. *Special Indemnity Fund v. Hunt,* 190 P.2d at 797–798.

16. *Special Indemnity Fund v. Hunt,* 190 P.2d at 799.

17. *Id.*

18. *Special Indemnity Fund v. Hunt,* 190 P.2d at 798.

19. The following are a few of the cases adhering to the general appellate independent-review standard in deciding whether the compensation court had jurisdiction to enter an award against the Special Indemnity Fund. *Special Indemnity Fund v. Choate,* supra; *Special Indemnity Fund v. Figgins,* supra; *Special Indemnity Fund v. Scott,* supra; and *Special Indemnity Fund v. Roberts,* supra.

requisite jurisdictional facts under the Special Indemnity Fund Act. We hold that the appellate courts independently review the evidence, without deference to the findings of the compensation court, to determine whether a claimant is a physically impaired person within the confines of 85 O.S.1991, § 171, however, the appellate courts are not free to disregard the competent and probative lay testimony.

 ¶ 12 The Court of Civil Appeals focused on the unmistakable fact that Estill's polio-caused impairments were more pronounced after his subsequent work-related injuries, an issue that we have recently addressed. Our contemporaneous opinion in *McGough v. Special Indemnity Fund,*[20] concluded that the remedial Special Indemnity Fund Act may not be strictly interpreted so that the *chronology of the manifestation of the disabilities* becomes the controlling factum. In *McGough,* the Workers' Compensation Court denied the claim against the Special Indemnity Fund because it was based on a worsening of the earlier injury rather than the subsequent injury and we reversed.

¶ 13 In the instant matter, the Fund neither objected to nor controverted the testimony of Estill's lay witness that she had observed, prior to and after his work-related injuries, Estill's partial loss of use of his legs and arms caused by his childhood polio. The competent lay testimony was directed to the specific fact of Estill's partial loss of use of a major member of his body. Accordingly, upon our independent review of the evidence, we find Estill's competent and probative lay evidence alone is sufficient to prove his status as a "physically impaired person."

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; ORDER ON APPEAL OF THE THREE–JUDGE PANEL OF THE WORKERS' COMPENSATION COURT AFFIRMED.**

KAUGER, C.J., SUMMERS, V.C.J., and HODGES, SIMMS, OPALA and WATT, JJ., concur.

LAVENDER, J., concurs in result.

HARGRAVE, J., dissents.

---

20. *McGough v. Special Indemnity Fund,* 939 P.2d 1136 (1997), Rehearing denied 6/23/97.