2015 OK 64

Jeanette Y. BALL, Petitioner,

v.

MULTIPLE INJURY TRUST FUND
and the Workers' Compensation
Court, Respondents.

No. 112,122.

Supreme Court of Oklahoma.

Oct. 13, 2015.

Richard A. Bell, David Custar, The Bell Law Firm, Norman, Oklahoma, for the Petitioner.

Brandy L. Inman, Latham, Wagner, Steele & Lehman, P.C., Tulsa, Oklahoma, for the Respondents.

GURICH, J.

### Facts & Procedural History

¶ 1 Claimant sustained a work-related injury on July 14, 2009, while employed at Goodyear Tire & Rubber Company.[1] On December 13, 2010, the trial court determined Claimant had sustained 24% permanent partial disability to her back and 5% permanent partial disability for psychological overlay and awarded her $49,590.00. In that same

---

1. Claimant worked for Goodyear for approximately twenty-eight years as a forklift driver, tow truck driver, and ply cutter. The record indicates that on July 14, 2009, Claimant, while working as a ply cutter, " 'was pulling a ball up, which was a piece of rubber ball that got balled up. in a cutting device, out of the slitter, which was the machine that cut the rubber into two (2) pieces.' " Record on Appeal at 26. Claimant was in a standing position and felt pain in her lower back and left buttock.

order, the court found Claimant had 6% preexisting permanent partial disability to her back and 8% preexisting permanent partial disability for psychological overlay. Such findings are *Crumby* findings [2] and are rated assessments by the Workers' Compensation Court of the amount of preexisting unrelated impairments suffered by a claimant at the time the on-the-job injury occurred.[3] At the time of her July 2009 injury, **Claimant had no prior adjudicated on-the-job injuries.** On June 14, 2012, Claimant settled the claim with her employer for $75,000.00 over and above the previous award due to the "known and unknown" injuries she sustained on July 14, 2009.[4]

¶ 2 Although Claimant had only **one** previously adjudicated injury, on August 15, 2012, she filed a Form 3F seeking permanent total disability benefits from the Fund. The Form 3F lists her **one** injury of July 14, 2009, notes the *Crumby* findings, and alleges as other preexisting disabilities "Obvious & Apparent–Hearing Loss, Both Knees, R. Elbow, R. Wrist." [5] Claimant relied on expert testimony from Dr. Wilson who examined Claimant on September 4, 2012. Upon review of her medical history, Dr. Wilson concluded Claim-

ant had prior non-adjudicated injuries to her knees, right arm, and right wrist, and hearing loss and concluded: "[I]t is my opinion that due to the synergistic effect of Ms. Ball's work related injuries and resultant impairments, in combination with her age, educational background, economic status, and employment history, she is permanently totally disabled from performing any gainful employment for which she is qualified now or in the future." [6]

¶ 3 The trial court appointed Dr. Munneke to conduct a medical exam. Dr. Munneke reviewed Claimant's medical history and concluded: "It is my opinion at this time the patient exhibits a residual disability of 29% impairment to the body as a whole due to her last work related injury. Her other injuries are not combinable, and it is my opinion the patient is not permanently totally disabled as a result of the combination of her non-work related injuries along with her work related injury, nor is she permanently totally disabled as a result of her work related injury alone." [7] On October 30, 2012, Dr. Young examined Claimant on behalf of the Fund. After reviewing Claimant's medical history, Dr. Young found Claimant had 29% perma-

---

**2.** *J.C. Penney Co. v. Crumby*, 1978 OK 80, 584 P.2d 1325.

**3.** *See Hammons v. Okla. Fixture Co.*, 2003 OK 7, n. 11, 64 P.3d 1108, 1110 n. 11.

**4.** Record on Appeal at 6.

**5.** Record on Appeal at 7.

**6.** Record on Appeal at 22–24. Dr. Wilson noted the trial court's order of December 13, 2010, which found a 24% disability to Claimant's lumbar spine over and above a preexisting 6% disability as well as a 5% disability due to psychological overlay over and above a preexisting 8% disability. Dr. Wilson did not, however, assign any percentage of permanent partial disability.

**7.** Deposition of John Munneke, M.D., Ex. at 6. In his deposition, Dr. Munneke was asked:
Q: Do you think she's able to return to any job she did at Goodyear considering the [e]ffects of the 2009 injury and just the impairments that were adjudicated as preexisting?
A: Are you talking about the Crumby Findings?
Q: Yes.
A: I don't believe she could return to work at Goodyear.

Q: So it sounds like she is permanently totally disabled. The question is, really, the cause and whether the Crumby Findings are combined to reach that from a legal standpoint, correct?
A: Correct.
. . .
Q: If the Court finds that the Crumby Findings are combinable, is it your opinion that it is a combination injury?
Mr. Custar: That the PTD is due to the combination?
Mr. Coker: Correct.
A: Yes, because if you don't have a combination, she's not permanently totally disabled.
Q: (By Mr. Coker) So she's not permanently totally disabled just from the last injury alone?
A: No.
Q: So the legal issue is going to be whether or not the—
A: Crumby Findings—
Q: —Crumby Findings are combinable.
Deposition of John Munneke, M.D. Ex. at 9–12. The issue in this case is not whether Claimant is permanently totally disabled. The issue is whether Claimant had combinable disabilities so as to recover from the Fund.

nent partial disability to the body as a whole, had no combinable injuries, and was not permanently and totally disabled.[8]

¶4 In the proceedings below, Claimant conceded she had to be a physically impaired person to seek benefits from the Fund.[9] The only contested issue was whether the *Crumby* findings of preexisting disability made simultaneously with the adjudication of the July 2009 injury could be combined to render the Claimant a physically impaired person under 85 O.S. Supp. 2005 § 171. On April 1, 2013, the trial court found that such were combinable and awarded Claimant permanent total disability benefits against the Fund. The court did not find any obvious and apparent injuries. The Fund appealed to a three-judge panel, and on August 15, 2013, the panel unanimously vacated the trial court's decision and found Claimant was not a physically impaired person under 85 O.S. Supp. 2005 § 171, and therefore, was not entitled to permanent total disability benefits from the Fund.

¶5 Claimant appealed, and the Court of Civil Appeals reversed the three-judge panel's decision. The court held that because of amendments made in 2005, the Claimant was not required to show she was a physically impaired person before seeking compensation from the Fund. COCA concluded that Claimant's July 14, 2009 injury combined with the court's *Crumby* findings of preexisting disability rendered Claimant permanently and totally disabled and entitled her to compensation from the Fund. The Fund petitioned for certiorari review, and we granted review on March 2, 2015.[10]

### Standard of Review

¶6 "When statutory language is unambiguous, no further construction is needed, and the unambiguous language will

be applied as written." *St. John Med. Ctr. v. Bilby*, 2007 OK 37, ¶6, 160 P.3d 978, 979. If a strict, literal interpretation of the statute leads to an inconsistent or incongruent result between provisions, this Court will utilize rules of statutory construction to reconcile the discord. *State ex rel. Okla. State Dep't of Health v. Robertson*, 2006 OK 99, ¶6, 152 P.3d 875, 878. "In determining legislative intent, this Court will not limit consideration to one word or phrase but will consider the context of the ambiguous provision." *Bilby*, 2007 OK 37, ¶6, 160 P.3d at 979. "Statutory construction presents a question of law and lower court rulings in this regard are reviewed de novo." *Holley v. Ace Am. Ins. Co.*, 2013 OK 88, ¶5, 313 P.3d 917, 920.

### Analysis

¶7 The Legislature established the Fund in 1943 "to encourage employment of previously impaired workers."[11] The Fund protects employers "against additional liability for that class of individuals identified as physically impaired persons" in 85 O.S. § 171.[12] More specifically, the Fund "protect[s] employers from the responsibility to compensate a physically impaired person for disability resulting from the combination of the previous impairment and the subsequent impairment caused by an on-the-job injury." *Multiple Injury Trust Fund v. Wade*, 2008 OK 15, ¶13, 180 P.3d 1205, 1209. "[T]he employer is liable only for the amount of disability caused by the subsequent accident"—the Fund "is responsible for excess awards resulting from combined disabilities." *Figgins*, 1992 OK 59, ¶6, 831 P.2d at 1382. "The Fund does not stand as a prime, original or substitute obligor." *Levi v. Special Indem. Fund*, 1964 OK 32, ¶9, 389 P.2d 620, 622. Rather, its liability "is derived from the anterior obligation of the employer" and

---

8. Record on Appeal at 33.

9. *See, e.g.,* Transcript of Proceedings at 6 (Aug. 2, 2013).

10. Division IV's interpretation conflicts with the holding of Division I of the Court of Civil Appeals in *Multiple Injury Trust Fund v. Forbes*, Case No. 112,663 (Nov. 26, 2014), wherein the court held that a finding that a Claimant is a physically

impaired person is jurisdictionally required before awarding benefits against the Fund.

11. *Special Indem. Fund v. Figgins*, 1992 OK 59, ¶6, 831 P.2d 1379, 1381. The Fund was originally named the Special Indemnity Fund. In 1999, the Legislature changed the name to the Multiple Injury Trust Fund.

12. *Id.* ¶16, 831 P.2d at 1385.

"supplements the employer's obligation." *Wade*, 2008 OK 15, ¶ 16, 180 P.3d at 1209. The Fund's liability "does not attach until the extent of the employer's primary liability for the subsequent work-related injury has been judicially determined." *Id.*

 ¶ 8 "Awards against the Fund may be entered only for an obligation **defined and authorized by statute,"** [13] and "[o]nly **upon authority of the statute** can additional compensation be awarded for increased disability resulting from subsequent injury." [14] **The Workers' Compensation Court lacks jurisdiction to enter an award against the Fund unless a Claimant proves that at the time of the subsequent injury he or she was a physically impaired person.** [15] A Claimant's status as a physically impaired person is in fact "precedent to" the Workers' Compensation Court's jurisdiction over the Fund. *Special Indem. Fund v. Estill*, 1997 OK 99, ¶ 10, 943 P.2d 606, 610. [16]

 ¶ 9 In this case, Claimant concedes she must be a physically impaired person to seek benefits from the Fund. The 2005 version of 85 O.S. § 171 defines physically impaired person:

13. *Reynolds v. Special Indem. Fund*, 1986 OK 64, ¶ 5, 725 P.2d 1265 at 1267 (emphasis added).

14. *Threatt v. Special Indem. Fund*, 1977 OK 213, 571 P.2d 465, 467 (emphasis added).

15. *Special Indem. Fund v. Hunt*, 1948 OK 58, ¶ 4, 190 P.2d 795, 799 (1948). *See also Stidham v. Special Indem. Fund*, 2000 OK 33, n. 20, 10 P.3d 880, 886 n. 20 ("One's status as a physically impaired person is treated as a jurisdictional fact...."); *Figgins*, 1992 OK 59, ¶ 7, 831 P.2d at 1382 ("Before an award against the Indemnity Fund can be sustained, the claimant must show that he/she is a physically impaired person within the meaning of § 171."); *Reynolds*, 1986 OK 64, ¶ 5, 725 P.2d at 1267-68 ("Before an award may be made it must be shown that ... the claimant is a 'physically impaired person' within the meaning of statutory law...."); *Special Indem. Fund v. Smith*, 1960 OK 35, ¶ 6, 349 P.2d 759, 760 (" 'The State Industrial Commission is without jurisdiction to enter an award against the Special Indemnity Fund under the provisions of § § 171 and 172 unless it be shown that at the time of the subsequent injury claimant was a physically impaired person....' "); *Fund v. Edmonds*, 1950 OK 193, ¶ 12, 203 Okla. 419, 222 P.2d 742, 743 (" 'The Commission has no author-

For purposes of Sections 171 through 176 of this title, the term 'physically impaired person' means a person who as a result of accident, disease, birth, military action, or any other cause, has suffered the loss of the sight of one eye, the loss by amputation of the whole or a part of a member of his body, or the loss of the use or partial loss of the use of a member such as is obvious and apparent from observation or examination by an ordinary layman, that is, a person who is not skilled in the medical profession, **or any previous adjudications of disability adjudged and determined by the Workers' Compensation Court or any disability resulting from separately adjudicated injuries and adjudicated occupational diseases even though arising at the same time.** [17]

At the time of her July 14, 2009 injury, Claimant indisputably had no prior adjudicated on-the-job injuries. Nevertheless, she maintains the *Crumby* findings of 6% preexisting disability to the back and 8% preexisting disability for psychological overlay are "previous adjudications of disability" under 85 O.S. Supp. 2005 § 171.

¶ 10 In *Special Indemnity Fund v. Carson*, 1993 OK 64, 852 P.2d 157, this Court

ity to enter an order against the Fund until it is shown by competent proof that the employee is a "physically impaired person" as defined by the Special Indemnity Fund Act.' ").

16. The Form 3, commencing a claim for compensation, also recognizes that a Claimant's status as a physically impaired person is necessary to assert a claim for benefits against the Fund. The Form 3 provides in relevant part: "Are you a previously impaired person due to a prior workers' compensation injury or obvious and apparent preexisting disability? If "YES", you may be entitled to benefits for combined disabilities. Any claim made for benefits for combined disabilities must be commenced by the filing a "Form 3-E" or "Form 3-F," as appropriate, with [the] Workers' Compensation Court." Supplemental Record on Appeal at 46.

17. 85 O.S. Supp. 2005 § 171 (emphasis added). "The general rule is that the law in effect at the time of an employee's later/subsequent job-related injury is to be used in fixing [the] Fund's liability." *Multiple Injury Trust Fund v. Pullum*, 2001 OK 115, ¶ 9, 37 P.3d 899, 904. Neither party disputes the 2005 version of Section 171 applies in this case.

addressed whether a *Crumby* finding of preexisting disability was a previous adjudication under 85 O.S. 1991 § 171. At that time, Section 171 defined physically impaired person to include a person who suffered "any disability which previously has been adjudged and determined by the Workers Compensation Court...." 85 O.S. 1991 § 171. This Court held that a *Crumby* finding of preexisting disability made contemporaneously with an adjudication of the subsequent injury is not a *previous* adjudication as required by the statutory language. The Court strictly interpreted the statute and held that such "require[d] an enumerated loss or an adjudication of disability *prior to* the subsequent injury for the Fund's liability to attach." *Carson,* 1993 OK 64, ¶ 11, 852 P.2d at 159 (emphasis added). In response to this Court's decision in *Carson,* the Legislature, in 1993, amended Section 171 to specifically include a *Crumby* finding of preexisting disability in the definition of a physically impaired person. Section 171 was amended to provide: " '[P]hysically impaired person' means ... *any preexisting disability* adjudged and determined by the Workers' Compensation Court...." 85 O.S. Supp. 1993 § 171.

¶ 11 However, by 1994 the Fund was estimated to be over $16.2 Million behind in payments,[18] and because of the Fund's "continuing problem with the timely payment of awards due to lack of funds,"[19] a joint legislative committee was created to study the Fund including "[a] determination of the impact that dissolution of the [Fund] would have on businesses located in this State."

*Autry v. Multiple Injury Trust Fund,* 2001 OK 79, ¶ 8, 38 P.3d 213, 215.

¶ 12 In 1999, the Legislature began the dissolution of the Fund. *Bilby,* 2007 OK 37, ¶ 9, 160 P.3d at 980. "Under the 1999 amendments, for actions filed after October 31, 1999, an employee did not receive any compensation from either the Fund, the employer, or the employer's insurance for increased disability from combined injuries resulting in permanent *partial* disability."[20] These benefits have never been statutorily restored. In 2000, the dissolution of the Fund "was completed when the Legislature discontinued benefits from the Fund for a material increase in combined disability resulting in permanent *total* disability" if the last injury occurred on or after June 1, 2000.[21] "**The 2000 amendments expressly provided that, for actions filed after June 1, 2000, *an employer* bears the responsibility for the increase in disability caused by a combination of current and past injuries if the combined injuries result in permanent total disability.**" *Bilby,* 2007 OK 37, ¶ 10, 160 P.3d at 980 (internal citations omitted) (emphasis added). As such, between June 1, 2000, and November 1, 2005, the Fund *had no liability* to a claimant for any benefits.

¶ 13 In 2005, however, the Legislature reinstated the Fund's liability for permanent *total* disability benefits due to a combination of disabilities when the date of the last injury occurred on or after November 1, 2005.[22] **At the same time, the Legislature amended Section 171 and specifically removed the word "preexisting," excluding a *Crumby* finding of preexisting disability from the**

---

18. Catherine Doud, *Oklahoma Special Indemnity Fund: A Fund Without a Function,* 30 Tulsa L. Rev. 745, 759 (1995).

19. *Dean v. Multiple Injury Trust Fund,* 2006 OK 78, ¶ 22, 145 P.3d 1097, 1104.

20. *Bilby,* 2007 OK 37, ¶ 9, 160 P.3d at 980 (emphasis added). The Fund initially compensated an employee for any "material increase in disability caused by the combination of the immediate injury and previous injuries, *both* for permanent partial disability and permanent total disability." *Id.* ¶ 8, 160 P.3d at 980. In 1986, a minimum threshold of 17% material increase due to the combination of injuries was required to proceed against the Fund. 85 O.S. Supp.

1986 § 172(C). The minimum threshold increased to 40% in 1992, *see* 85 O.S. Supp. 1992 § 172(C), and in 1999, the Fund's liability for material increase was abolished, and the Fund's liability for combined disability was limited to permanent total disability if the subsequent injury occurred on or after November 1, 1999. 85 O.S. Supp. 1999 § 172.

21. *Autry,* 2001 OK 79, ¶ 10, 38 P.3d at 216. Also in 2000, the State Insurance Fund (now CompSource) loaned money to the Fund to pay delinquent orders. 85 O.S. Supp. 2000 § 138, 173.3.

22. 85 O.S. Supp. 2005 § 172(B)(3).

**definition of a physically impaired person.** The 2005 version provides recovery only for *"previous* adjudications of disability adjudged and determined by the Workers' Compensation Court...." 85 O.S. Supp. 2005 § 171. The 2005 version is substantively the same as the 1991 version addressed in *Carson.*[23] As such, *Carson* controls, and the Workers' Compensation Court did not have jurisdiction to impose liability on the Fund in this case.[24]

¶ 14 We again note that Claimant conceded she must be a physically impaired person under Section 171 to seek benefits from the Fund. Additionally, by its terms, Section 171 unambiguously applies to the *entire* Act, providing that "for the purposes of Sections 171 through 176 of this title, the term 'physically impaired person' means...."[25] COCA, however, in this case and in a series of recent cases, has held that under 85 O.S. Supp. 2005 § 172 a Claimant no longer has to prove he or she is a physically impaired person to

recover from the Fund. Contrary to COCA's conclusion,[26] nothing in the 2005 amendments removed the jurisdictional requirement that a Claimant be a physically impaired person at the time of his or her subsequent injury to seek compensation from the Fund.

¶ 15 Since 1943 when the Fund was created, Section 172 has included the introductory language **"an employee, who is a 'physically impaired person,' receives an accidental personal injury compensable under the Workmen's Compensation Law which results in additional permanent disability...."** *See* 85 O.S. Supp. 1943 § 172. In 1977, Section 172 was amended and, for the first time, divided into subsections, with subsection (A) retaining the above introductory language and covering "combined disability resulting in permanent *partial* disability," and subsection (B) covering permanent *total* disability. *Bilby,* 2007 OK 37, ¶ 12, 160 P.3d at 980 (emphasis added). Since that time,

---

**23.** The 1991 version provided "any disability which previously has been adjudged and determined by the Workers Compensation Court ..." 85 O.S. 1991 § 171, whereas the 2005 version states "previous adjudications of disability adjudged and determined by the Workers' Compensation Court." 85 O.S. Supp. 2005 § 171.

**24.** Claimant also argues that the *Crumby* findings of preexisting disability constitute "any disability resulting from separately adjudicated injuries and adjudicated occupational diseases even though arising at the same time" under 85 O.S. Supp. 2005 § 171. We disagree. *Crumby* findings of preexisting disability are not separately adjudicated but simultaneously occurring injuries as contemplated in 85 O.S. Supp. 2005 § 171.

In *Special Indemnity Fund v. Archer,* 1993 OK 14, 847 P.2d 791, the Claimant was awarded compensation for two separate claims against his employer for simultaneous injuries occurring on September 30, 1984—a cumulative trauma injury to his hearing caused by noise exposure and a cumulative trauma injury to his lungs and respiratory system caused by inhalation of airborne irritants. The Claimant then sought benefits from the Fund for the two separately adjudicated but simultaneously occurring injuries.

The Fund asserted liability was improper because at the time of the Claimant's injuries in 1984, simultaneously occurring injuries were not combinable for purposes of recovering from the Fund. The Fund asserted that only *after* a 1986 amendment to Section 171 did the Legislature intend to allow combination of separately adjudicated injuries arising at the same time to support

an award against the Fund. The Fund cited language added to the 1986 version of Section 171 which provided, "including all separately adjudicated injuries and adjudicated occupational diseases even though arising at the same time." *Archer,* 1993 OK 14, ¶ 3–4, 847 P.2d at 793 (citing 85 O.S. Supp. 1986 § 171).

This Court agreed with the Fund and, as was the case in *Carson,* strictly interpreted the statute, finding that under the 1984 version of Section 171, the law in effect at the time of Claimant's simultaneous injuries, the claim against the Fund failed because there was no *prior* and no *subsequent* injury "for the simple reason the injuries occurred simultaneously." *Id.* ¶ 11, 847 P.2d at 795. The Court then specifically noted that because Sections 171 and 172 "had been the subject of extensive judicial construction which required a subsequent injury," the Legislature's amendment to Section 171 in 1986 to add the language "including all separately adjudicated injuries and adjudicated occupational diseases even though arising at the same time" could "reasonably indicate a legislative intent to somehow alter the law as it then existed." *Id.* n. 5, 847 P.2d at 795 n. 5. The language added in 1986 has remained in Section 171 since that time and very closely tracks the language found in the 2005 version of Section 171. Such language allows recovery for injuries of the type discussed in *Archer.*

**25.** *See* supra ¶ 9.

**26.** COCA neglected to consider Section 172 in its entirety and instead read Section 172(B)(3) in isolation.

subsection (B) has governed combined injuries resulting in permanent total disability, continually including the language "[i]f such combined disabilities constitute permanent total disability...."[27] However, this Court **has never** construed subsection (B) to remove the requirement that a claimant be a physically impaired person before recovering against the Fund.

¶ 16 In 1999, Section 172(A) was again divided into subparts, with Section 172(A)(1) retaining the above introductory language, and Section 172(A)(2) then specifically addressing permanent partial disability. Section 172(B) continued to address permanent total disability. The amendments in 2000 and 2005 continued this structure with Section 172(A)(1) retaining the above introductory language, Section 172(A)(2) addressing permanent partial disability, and Section 172(B) addressing permanent total disability. The 2005 version of Section 172 provides in relevant part:

A. 1. For actions filed before November 1, 1999, except as otherwise provided in this section, an employee, who is a "physically impaired person" and who receives an accidental personal injury compensable under the Workers' Compensation Act which results in additional permanent disability so that the degree of disability caused by the combination of both disabilities is materially greater than that which would have resulted from the subsequent injury alone, shall receive compensation on the basis of such combined disabilities from the Multiple Injury Trust Fund. Only disability due to an injury to the body as a whole shall be combinable with a prior body disability, except that disability to a major member may be combined with disability to the body as a whole.

A. 2. a. For actions filed before November 1, 1999, *if such combined disabilities* constitute *partial* permanent disability as defined in Section 3 of this title, then the employee shall receive full compensation as now provided by law for the disability resulting directly and specifically from the *subsequent* injury....

A. 2. b. For actions filed on or after November 1, 1999, but before June 1, 2000, *if the combined disabilities* constitute *partial* permanent disability as defined in Section 3 of this title, then the employee shall receive full compensation as now provided by law for the disability resulting directly and specifically from the *subsequent* injury....

B. 1. For actions in which the subsequent injury occurred before June 1, 2000, *if such combined disabilities* constitute permanent *total* disability, as defined in Section 3 of this title, then the employee shall receive full compensation as provided by law for the disability resulting directly and specifically from the *subsequent* injury....

2. For actions in which the subsequent injury occurred on or after June 1, 2000, but before November 1, 2005, *if such combined disabilities* constitute permanent *total* disability, as defined in Section 3 of this title, then the claimant shall receive full compensation as now provided by law for the disability resulting directly and specifically from the *subsequent* injury....

3. For actions in which the subsequent injury occurred on or after November 1, 2005, *if such combined disabilities* constitute permanent *total* disability, as defined in Section 3 of this title, then the employee shall receive full compensation as provided by law for the disability resulting directly and specifically from the *subsequent* injury.[28]

The phrases "if such combined disabilities" and "subsequent" used throughout Sections 172(A)(2) and 172(B) *undoubtedly refer back* to the introductory paragraph of Section 172(A)(1), and the demarcation of dates within the subdivisions of Section 172 was to address the Fund's insolvency and future liability. COCA's interpretation of Section 172 creates discord where none exists,[29] and

27. 85 O.S. Supp. 1977 § 172(B).

28. 85 O.S. Supp. 2005 § 172 (emphasis added).

29. "'Words and phrases of a statute are to be understood and used not in an abstract sense, but with due regard for context and they must harmonize with other sections of the act to deter-

ignores the obvious legislative intent over the last twenty years to decrease and limit the Fund's liability.

### Conclusion

 ¶ 17 Under the 2005 version of 85 O.S. § § 171–172, an employee must be a physically impaired person as defined by the applicable statute before he or she can seek benefits from the Fund. A *Crumby* finding of preexisting disability made simultaneously with an adjudication of an on-the-job injury may not be combined with that adjudicated injury to render the Claimant a physically impaired person under 85 O.S. Supp. 2005 § 171. The COCA opinion in this case is vacated, and the COCA opinion in *Multiple Injury Trust Fund v. Perry*, Case No. 111,-759 (Apr. 30, 2014) is overruled.

¶ 18 COMBS, V.C.J., WATT, WINCHESTER, EDMONDSON, TAYLOR, GURICH, JJ., concur.

¶ 19 KAUGER, J., concurs by reason of stare decisis.

¶ 20 REIF, C.J., (by separate writing) dissents.

¶ 21 Colbert, J., not participating.

REIF, C.J., dissenting:

¶ 1 The issue in this case is whether a Crumby finding of preexisting disability qualifies an injured employee as a "previously impaired person," as defined by 85 O.S. Supp. 2005, § 171, for purposes of recovery from the Multiple Injury Trust Fund. A Crumby finding identifies preexisting disability of an injured worker and is "material in determining [the employer's] liability for injuries attributable only to the last accident." *J.C. Penney Co. v. Crumby*, 1978 OK 80, ¶ 16, 584 P.2d 1325, 1331. By statute, "The employer shall be liable only for the degree of percent of disability which would have resulted from the subsequent injury if there had been no preexisting impairment." 85 O.S. Supp. 2005, § 172. In providing this limitation, the Legislature also recognized that increased disability may result from combining preexisting disability with disabili-

ty from the job-related injury, and created the Multiple Injury Trust Fund to compensate employee in certain cases of such increased disability.

¶ 2 The controversy over using a Crumby finding to determine the liability of the Fund stems from the language in § 171 that requires an employee with preexisting disability to meet the statutory definition of a "previously impaired person." The pertinent portion of the statutory definition applicable to the case at hand is "a person who has ... any previous adjudications of disability adjudged and determined by the Workers' Compensation Court." The Fund contends that this language means the preexisting disability of the injured employee must have been adjudicated **prior** to the "subsequent injury" being adjudicated. The Fund argues that a Crumby finding cannot meet this requirement, because it is made in the same proceeding where the disability due to the "subsequent injury" is determined.

¶ 3 While this is a reasonable interpretation, it assumes that the "subsequent injury" is the event or point in time that a "previous adjudication" must precede. It is equally reasonable that the Legislature intended that the "previous adjudication" need only precede an action for the adjudication of the liability of the Fund.

¶ 4 As the Crumby case points out, "[The] Fund's liability does not attach unless and until the extent of the [employer's] primary obligation [for the job-related injury] stands judicially determined by an award against the employer." *Crumby*, ¶ 10, 584 P.2d at 1329. An action or proceeding to determine the liability of the employer and to make an award for the job-related injury comes before, and is separate and distinct from, an action or proceeding to adjudicate the Fund's liability. Workers' Compensation Court Rules 10 & 11, 85 O.S. Supp. 2010, Ch. 4, App.

¶ 5 In an action to determine the liability of the Fund under section 172(B)(3), the issue is whether "such combined disabilities constitute permanent total disability." Use of "such" in this context refers back to a

mine the purpose and intent of the legislature.'" *Robertson*, 2006 OK 99, ¶ 7, 152 P.3d at 878.

more specific statement identifying the "combined disabilities." This more specific delineation of "combined disabilities" is set forth in subsection A(1).

¶6 This provision sets forth the elements that an employee must prove in order to "receive compensation on the basis of such combined disabilities from the Multiple Injury Trust Fund." **At the time of the action or proceeding against the Fund,** a claimant must show he or she (1) is a "physically impaired person" (i.e. have a previous adjudication of preexisting disability, including a Crumby finding), (2) has received "an accidental personal injury compensable under the Workers' Compensation Act" (i.e. the last injury), and (3) has "additional permanent disability so that the degree of disability caused by the combination of both disabilities is materially greater than that which would have resulted from the subsequent injury alone." Again, in the case at hand, this third element is permanent total disability.

¶7 While it is true that *Special Indemnity Fund v. Carson,* 1993 OK 64, 852 P.2d 157, supports the Fund's interpretation of "previous adjudication," the dissenting opinion in *Carson* correctly points out that this interpretation results in different treatment of employees with preexisting disabilities who sustain job-related injuries. A classification of injured employees that creates preference for some and unequal treatment of others offends Article 5, Section 46 of the Oklahoma Constitution. *Ponca Iron & Metal, Inc. v. Wilkinson,* 2010 OK 75, ¶7, 242 P.3d 534.

¶8 Based on the foregoing considerations, I would hold that a Crumby finding does qualify an injured worker as a "previously impaired person" for purposes of seeking recovery from the Multiple Injury Trust Fund. Accordingly, the Workers' Compensation Court did not err in using the Crumby finding in the case at hand to award permanent total disability. Therefore, I respectfully dissent.